## Tappan *v.* Tappan.

As a general rule, a party must recover according to his legal rights at the com-
mencement of the action, and according to the legal character in which he
sues.

As a general rule, also, a party cannot, in his individual name, sustain an action
for demands due to an estate which he represents in the capacity of executor
or administrator.

The designation of a person in a will as residuary legatee and executor of the
will, does not at common law authorize him to collect demands due to his tes-
tate, until he shall be legally appointed by the probate court as executor.

The provision of the Rev. Stat. ch. 161, § 10, by which a person interested in
an estate may commence an action as administrator, and that the same shall
*not be abated if the administrator* then or afterwards appointed shall indorse
the writ and prosecute the suit, cannot apply to an action commenced by an
individual in his own name.

An heir has no right to the control of the personal property of his ancestor
until after the administrator shall have settled his account in the probate
court.

As a general rule, no action can be sustained for a legacy till after demand made
for the same.

Where property is left by will to two persons, as joint trustees, and the interest
of the fund is given to one of them, whether an action at common law can be
sustained for such interest by the legatee against his co-trustee, or whether
resort must not be had to equity, *quære?*

Assumpsit. The writ was dated January 16, 1851, and
contained three counts. The first was for $2000 for interest
due and owing from the defendant to the plaintiff, on the
16th day of January, 1851. The second was upon a prom-
issory note, dated June 1, 1849, for $200, payable to the
plaintiff or order, on demand, with interest. And the third
was for $5000 alleged to be due to the plaintiff, January 1,
1851, for so much money before that time had and received
by the defendant to the plaintiff's use, and for so much paid,
laid out and expended by the plaintiff for the defendant, at
his request, and for goods, wares and merchandize sold and
delivered by the plaintiff to the defendant.

The writ summoned the defendant, Weare Tappan, to
answer to the plaintiff, John W. Tappan, in a plea of the

case, and the promises and undertakings were all alleged to have been made to the plaintiff in his individual character. There was no mention in the writ of the estate of John Tappan, nor any allegation of any obligation or undertaking to any one except the plaintiff.

On the 7th of April, 1851, the plaintiff filed the following specification of his demands:

" Sullivan, ss. February term, court of common pleas.— *Tappan* v. *Tappan.* This action is brought to recover the amount due on certain promissory notes, signed by the defendant, and payable to the plaintiff or his order, on demand, and all with interest annually, and more particularly described as follows:

One note, dated June 1, 1849, for two hundred dollars, on which interest is indorsed to June 1, 1850. One, dated May 22, 1847, for two hundred dollars, on which the interest is indorsed to May 22, 1850. And one, dated March 6, 1850, for one hundred dollars."

On the 7th of May, 1852, the plaintiff filed a further specification, as follows:

" Sullivan, ss. Court of common pleas, February term, 1852. *John W. Tappan* v. *Weare Tappan.* This action is brought to recover a promissory note, dated May 22, 1847, for two hundred dollars, payable to the plaintiff, or order, on demand, with interest annually, and signed by the defendant.

Also, one other promissory note, dated June 1, 1849, for two hundred dollars, payable to the plaintiff, or order, on demand, with annual interest, and signed by the defendant.

Also, one other promissory note, dated March 6, 1850, for one hundred dollars, payable to the plaintiff, or order, on demand, with interest annually, and signed by the defendant.

Also, one hundred and sixty-five dollars and nineteen cents, for so much money had and received by the defendant to and for the plaintiff's use, in 1846, of one Theodore

French, administrator of the estate, which was of William A. Kent, late of Concord, in the county of Merrimack, deceased.

Also, four thousand eight hundred dollars for so much money had and received by the defendant to and for the plaintiff's use, before the date of the plaintiff's writ, on the following described promissory notes of the plaintiff, (which said notes were received by the defendant, January 1, 1840, as per the receipt, in writing, of the defendant of that date :)

Note against Samuel Jackman and others, for $250 ;

Note against Allen Cressey and others, for $150 ;

Note against Jabez Sawyer and others, for $200 ;

Note against Jesse A. Maxfield and others, for $200 ;

Note against Cyrus Cressey and others, for $500 ;

Note against Samuel Presley and others, for $300 ;

Note against Moses Styles and others, for $250 ;

Note against Converse Nichols and others, for $100 ;

Note against A. F. Cressey and others, for $250 ;

Note against Daniel Marsh, jr, and others, for $100 ;

Note against Nathaniel A. Davis and others, for $600 ;

Note against Anthony Colby and others, for $116,94 ;

Note against Jeremiah Paige, jr., and others, for $400 ;

Note on W. Sawer and Brown affairs, for $300."

After the filing of the last specification, the defendant pleaded the general issue, and gave notice of set-off, as follows :

" And the plaintiff will take notice that on trial of the above issue, the defendant will insist on and give in evidence, by way of set-off, the account or demand herewith exhibited, amounting to fifteen thousand two hundred and sixty-seven dollars and sixty-five cents, and prays that the same be allowed him, and judgment for the same, and for whatever balance may be due him, and for his costs.

WEARE TAPPAN.

Tappan *v.* Tappan.

*John W. Tappan to Weare Tappan,*   *Dr.*

To journeys to Newport and Claremont, and time
and expenses in services as executor or agent re-
lating to the estate of John Tappan, late of
Claremont, deceased, from October 17, 1837, to
January 23, 1841,........................    $36,50

1841.   January 23.   To cash, two hundred and
twenty-three dollars and two cents, so much
money had and received by the plaintiff to the
defendant's use, advanced and paid by the de-
fendant to the plaintiff, under a mistake,.......    223,02

February 2, 1842.  To cash, two hundred and twen-
ty-three dollars, for so much money had and re-
ceived by the plaintiff to the defendant's use, as
above, under a mistake,.....................    223,00

1843.   January 31.   To cash, two hundred and
twenty-three dollars, so much money then had
and received by the said plaintiff to the defend-
ant's use, paid to the plaintiff by the defendant
under a mistake,........................    223,00

1844.   January.   To cash, two hundred and twen-
ty-three dollars and two cents, so much money
had and received by the plaintiff to the defend-
ant's use, paid to the plaintiff by the defendant
under a mistake,........................    223,02

To bill of cost and execution against George Kent,
March term, court of common pleas, Merrimack
county, 1844,............................    13,42

1845.   March 6.   To cash, two hundred and twen-
ty-three dollars and two cents, so much money
had and received by the plaintiff to the defend-
ant's use, advanced and paid to the plaintiff by
the defendant under a mistake,..............    223,02

1846.   March 12.   To cash, two hundred and
twenty-three dollars, so much money had and re-

ceived by the plaintiff to the defendant's use, paid by the plaintiff to the defendant under a mistake, ................................. 223,00

1847. March 12. To cash, two hundred and twenty-three dollars, so much money had and received by the plaintiff from the defendant to the defendant's use, advanced and paid to the plaintiff by the defendant under a mistake,.... 223,00

1848. April. To cash, two hundred and twenty-three dollars, so much money had and received by the plaintiff to the defendant's use, paid to the plaintiff by the defendant under a mistake,. 223,00

1848. To retainer on an indictment plaintiff for perjury, Sullivan county,.................... 25,00

1849. To fifteen hundred and sixty dollars, (interest) piad by the defendant to the estate of said John Tappan, deceased, on account of old Rogers and Straw demands, for which John C. Tappan and R. M. Tappan have deed of two tracts of land, one fifty acres, and one fifty-four acres, in the westerly part of Warner,......... 1560,00

1849. To costs and expenses in carrying on suits at law and in equity, on account of said estate, against David Heath and Benjamin Evans, from 1830 to August, 1847,..................... 3200,00

To interest on moneys advanced from time to time in the above, to counsel, to witnesses, and for copies of depositions, &c.,.................. 725,00

To two and one half per cent. commission as executor or agent, on sixty-one thousand dollars of said estate,............................... 1525,00

1849. September 11. To cash,.............. 129,42

December 31. To board of Ralph M. Tappan from June 18, 1849, to December 31, 1849, at 1,75 per week, 29 weeks, $50,75

Tappan *v.* Tappan.

Cr.   Nov. 1849.   By a second hand floor

cloth,.............................   3,00

                                        47,75

1850.   July 11.   To cash sent by stage driver,...   100,00

To board of R. M. Tappan, and washing, from

   December 31, 1849, to January 16, 1851, at 2,25

   per week,.............................   121,50

To cash, six thousand dollars, for money had and

   received by the plaintiff since October 17, 1837,

   to the defendant's use, for money paid, laid out

   and expended by the defendant for the plaintiff,

   at his request, and for commissions, and interest

   of divers sums of money due and owing from

   the plaintiff to the defendant,...............   6000,00

                                    $15,267,65"

The case was committed to an auditor, who made report as follows:

The auditor being first duly sworn, having given notice to the parties that he would attend to the duties of said appointment on the 9th day of September, A. D. 1853, at 9 o'clock A. M., at the Tremont House, in Claremont, having attended at the said time and place, and heard and considered the evidence and allegations of the parties, reports as follows:

He finds due to the plaintiff the amount of the three notes first described in his specification, and the interest according to the tenor thereof.

As to the other two claims in the plaintiff's specification named, the auditor makes the following statement of facts:

The will of John Tappan was proved Oct. 17, 1837, and John W. Tappan and Weare Tappan, the parties in this action, were the executors named in the will.

The will contains the following clauses:

" I also give to the said Weare Tappan and John W. Tappan, in trust, the sum of ten thousand dollars, to be

made permanent and secure by mortgages on real estate or otherwise, as said trustees may consider most advisable ; the interest of said sum to be disposed of by said trustees in manner following, to wit : two hundred dollars to be paid annually to my wife, Sabrina Tappan, so long as she shall remain my widow, and no longer, and the proceeds of the remainder of the interest of said sum of ten thousand dollars to be paid to my said son, John W. Tappan, or his heirs, annually, or oftener, should it be considered advisable and necessary, during the natural life of my son John W. Tappan ; and at his decease, it is my will and intention to give the said sum of ten thousand dollars, in trust, to my grandchildren, in equal proportions.

" Item—All the rest, residue and remainder of my estate, whether real, personal or mixed, in Claremont aforesaid, wheresoever being, after payment of my just debts, I give, bequeath and devise to my son John W. Tappan."

Letters testamentary were granted to Weare Tappan and John W. Tappan, the executors named in the will, Oct. 17, 1837, who gave a bond, in the usual form, to pay debts and legacies, with one surety only.

The probate court, in March, 1851, revoked the letters testamentary before granted to Weare Tappan.

John W. Tappan filed in the probate court a new bond, in the usual form, to pay debts and legacies, with two sureties, dated April 2, 1851.

Sabrina Tappan, wife of the testator, died in the year 1840.

John W. Tappan was the only child and heir-at-law of John Tappan.

John W. Tappan settled his account as executor, May 21st, 1851, and has paid all the debts, legacies and funeral charges of the testator.

As to the fourth item of the plaintiff's specification, the auditor finds that in 1846 the defendant, as executor of the will of John Tappan, received the sum of $165,19 of The-

odore French, administrator *de bonis non* of the estate of Wm. A. Kent, and that the plaintiff should recover that sum, and the interest thereon, from the date of the writ, if the court shall hold that he is entitled to the same in this action upon the foregoing statement of facts.

And as to the last item in the plaintiff's specification, the auditor finds that the defendant gave to the plaintiff a certificate in words as follows : " January 1, 1840. I hereby certify that I have in my hands and possession, as one of the executors of the last will and testament of John Tappan, late of Claremont, deceased, the following notes, or the avails of them, being part of the trust property mentioned in the will of said deceased"—and then are enumerated the notes last named in the plaintiff's specification, the principal of said notes amounting to the sum of $3716,94, that the defendant paid the interest annually on said amount to the plaintiff, from the date of said certificate to January 1, 1848.

Also, that the defendant paid on the same, Sept. 11, 1849, the sum of one hundred and twenty-nine dollars and forty-two cents, and on July 11, 1850, the sum of one hundred dollars.

That the said sum of $3716,94 is a part of the $10,000 in trust, referred to in the clause of the will first quoted.

The auditor finds due to the plaintiff, from the defendant, so much of said sum of $3716,94, and of the unpaid interest, as the court shall hold that the plaintiff is entitled to recover in this action, upon the foregoing statement of facts.

As to the defendant's set-off, if the court shall hold, upon the foregoing statement of facts, that the first item is not barred by the statute of limitations, and that the defendant is entitled to recover the same in this action, he finds the same due from the plaintiff to the defendant. Otherwise he disallows it.

As to the three items of $223,02 each, and the five items of $223 each, if the court shall hold that the defendant is

entitled to recover the same upon the preceding statement of facts, and that the same are not barred by the statute of limitations, the auditor allows them, with such interest as the court shall order.　Otherwise he disallows them.

The auditor disallows the item of $13,42.

He allows the item of $25.

He disallows the three items of $3200, $725 and $1525.

The two items of $129,42 and of $100 he disallows here, as they are allowed as interest paid on the trust fund of $3716,94, unless the court shall hold, upon the foregoing statement of facts, that the same should be paid back.　In that case, he allows them, with such interest as the court shall order.

The two sums of $47,75 and $121,50, the auditor allows, with interest from the time of filing the set-off.

He disallows the last item of $6000.

The item of $1560, in the defendant's set-off, the auditor disallows.

*Snow,* with whom was *Metcalf,* for the plaintiff.

In this action, the auditor finds due the amount of the three notes first described in the plaintiff's specification, and the interest thereon, and he allows the items of $25, $47,75 and $121,50, set forth in the defendant's set-off, and interest on the two last items from the time of filing the set-off.　The allowance of various other items in the plaintiff's specification and the defendant's set-off, is made to depend upon the opinion of this court.

The main questions which arise upon the auditor's report are, first, was the plaintiff so far residuary legatee, by the will of his father, John Tappan, that, upon giving the usual bond of a residuary legatee, his father's estate would vest in him, and enable him to maintain an action therefor in his own name? and, second, if he could thus maintain an action, would the mere fact that he did not give the bond

until the action was commenced, prevent his maintaining the same?

1. John Tappan intended by his will to dispose of all his property, and to make the plaintiff, who was his only child and heir-at-law, residuary legatee. In giving a construction to the will, the court is bound to carry the intention of the testator into effect, if it can be done consistently with the rules of law. Authorities need not be cited upon this point. It appears by the will, that after the testator had made various bequests, and some provision for his wife, he inserted the following clause: "Item—All the rest, residue and remainder of my estate, whether real, personal or mixed, in Claremont aforesaid, wheresoever being, after payment of my just debts, I give, bequeath and devise to my son John W. Tappan." It will probably be conceded that the clauses, "in Claremont aforesaid," and "wheresoever being," standing as they do, without any thing being supplied, are inconsistent with each other. If the latter had preceded the former, they might perhaps have been reconciled, by defeating the intention of the testator. Now, which clause shall be rejected? Shall that clause be rejected which defeats the intention of the testator, or that which makes it effectual? Shall the clause *last* written in the will be rejected, or the one *first* written? An answer to these questions is found in the rules established for the construction of wills. Loose and doubtful words may be rejected as surplusage, when they oppose the broad and manifest intent of the testator, and if there be a latter clause repugnant to a former, so that one must be rejected, the latter clause must prevail, unless the intention of the testator, apparent from other parts of the will, leads to a different construction. See *Dawes, Judge, &c.* v. *Swan & al.,* 4 Mass. 208; 1 Roberts on Wills 491, n. 2, and cases there cited. By supplying the word *and,* however, there would be no occasion to reject either clause, and the intention of the testator would be made good. In the note to Roberts on Wills, last cited, it is laid

down as a rule of construction, that if a testator expresses himself incorrectly, the court will supply proper words, if the meaning distinctly appears.

Both parties in this action supposed that the plaintiff was residuary legatee; the probate court for this county so decided, and this, for some sixteen years, was the practical construction of the will.

But if the court hold that the plaintiff is not legatee of the entire residuum under the will, still the plaintiff insists that being only child and heir-at-law of the testator, he is so far a residuary legatee that, upon giving a bond to pay the funeral charges, debts and legacies, the estate of the testator vested in him. *Tarbell* v. *Whiting*, 5 N. H. Rep. 63; *Robinson* v. *Leavitt*, 7 N. H. Rep. 85; *Batchelder* v. *Russell*, 10 N. H. Rep. 39. If the court hold that the estate of the testator did not vest in the plaintiff, upon his giving bond on the 2d of April, 1851, then the plaintiff will be compelled to go through with all the forms and incur all the expenses of an ordinary administration, in order to obtain a decree in the probate court, authorizing him to pay to himself that residuum which the testator designed he should have by the will. The plaintiff trusts that the court will not make a decision attended with such results, unless forced to do it by the strict letter of the law.

2. This action was commenced January 16th, 1851, and the plaintiff filed his bond in the probate court April 2d, 1851. It is provided, Compiled Statutes, ch. 170, § 10, that " any person interested in the estate of any person deceased, may commence an action as administrator thereof, which shall not be abated nor the attachment lost by reason that such person is not administrator thereof, nor by his decease, if the administrator then or afterwards appointed shall, at the first or second term of the court, indorse the writ, and prosecute the same as plaintiff." The plaintiff brings his case clearly within the meaning, equity and necessity of

this provision, and it would operate as a great hardship upon him, if he were to lose his attachment in this action.

If the plaintiff is correct in his two foregoing positions, the auditor's report, it would seem, is to be disposed of as follows: The plaintiff is to recover the amount of the three notes first described in his specification, and the interest thereon, the item of $165,19, and the interest thereon from the date of the writ, and the item of $3716,94, and the interest thereon from January 1st, 1848. The first item of the defendant's set-off, $36,50, is to be disallowed, as it is barred by the statute of limitations. The three items of $223,02, and the five items of $223, are, of course, to be disallowed, as they were for the yearly interest paid prior to January 1st, 1848, on the item of $3716,94, mentioned in the plaintiff's specification. The item of $25, is to be allowed, also the item of $129,42, and interest thereon from Sept. 11th, 1849; the item of $100, and interest thereon from July 11th, 1850, and the two items of $47,75 and $121,50, and interest on the same from the time of filing the set-off.

But if the plaintiff is not correct in his positions, then he is simply to recover the amount of the three notes first described in his specification, and the interest thereon, and the balance of interest upon the item of $3716,94, from January 1st, 1848, to the date of the writ. And the defendant is to be allowed the items of $25, $47,75 and $121,50, and interest on the two last from the time of filing the set-off.

*Tappan & Bailey,* for the defendant.

It is not disputed that the plaintiff is entitled to recover the amount of the three notes mentioned in his first specification, with interest on the same, subject to the defendant's set-off. The case raises two material points.

1. As to the right of the plaintiff, as executor and residuary legatee of John Tappan, deceased, to recover in this

action, brought in his own name, for debts due the estate of the testator.

2. As to the interest on the sum of $3716,94, in the hands of the defendant, which the auditor finds to be part of the $10,000 bequeathed in trust.

The plaintiff having received of the defendant the interest on this amount from January 1, 1840, to January 1, 1848, and the sum of $229, for interest accruing subsequent to the latter date, claims in this action to recover the balance of interest from January 1, 1848, to the date of the writ; while the defendant, in his set-off, claims that the interest so paid on said amount, from January 1, 1840, under the supposition that the plaintiff was residuary legatee, and the defendant co-executor with him, should be paid back to him, (the defendant,) having been paid under a mistake, so much thereof as is not barred by the statute of limitations.

To the positions of the plaintiff, we reply:

1. That the plaintiff is not residuary legatee. The clause in the will upon which this point must be determined, is as follows: " Item—All the rest, residue and remainder of my estate, whether real, personal or mixed, in Claremont aforesaid, wheresoever being, after payment of my just debts, I give, bequeath and devise to my son John W. Tappan." It is not conceded that the clauses, " in Claremont aforesaid," and " wheresover being," are inconsistent with each other. It was the intent of the testator to restrict the legacy. The superior court, in the probate appeal in this case, say, " neither the court of probate nor this court can know that this is the residue of all the estate." If it had been material, after this decision, the defendant might have shown that there was other property on which, by its peculiar situation, the residuary clause in the will was not designed to operate, thus making the intention of the testator to restrict the clause to his property in Claremont perfectly apparent.

It is a well established rule of law, that in the interpreta-

tion of a will, it is the duty of the court to give effect to all the words, without rejecting or controlling any of them, if it can be done by a reasonable construction, not inconsistent with the manifest intention of the testator. Jarman on Wills 411, notes and authorities; 2 Black. Commentaries 380; *Dawes, Judge* v. *Swan & al.*, 4 Mass. 208; *Parsons & ux.* v. *Winslow*, 6 Mass. 169; *Constantine* v. *Constantine*, 6 Vesey 102; *Gray* v. *Minthorp*, 3 Ves. 105; *Homer* v. *Shelton*, 2 Metcalf 202.

It is only where two provisions in a will are totally inconsistent with each other, that it has ever been said that the *latter* clause will prevail. *Covenhover* v. *Shaler*, 2 Paige 202; *Pickering* v. *Langdon*, 22 Maine 30; *Homer* v. *Shelton*, 2 Metcalf 202.

It must not be understood that because the testator uses in one part of his will words having a clear meaning in law, and in another part words inconsistent with the former, that the first words are to be cancelled and overthrown. 1 Jarman on Wills 411, notes and auth.; *Parsons* v. *Winslow*, 6 Mass. 169.

A contrary principle is now fully established, in the doctrine that the general intent, although first expressed, shall overrule the particular. 2 Williams Exr's 789, 790; 1 Jarman on Wills 411, auth. and notes.

The assumed inconsistency of the two clauses in question here are not of the character to authorize the court either to strike out or substitute. They are not, in fact, inconsistent with each other, but only with what the plaintiff assumes to have been the intention of the testator. But authorities need not have been cited on this point. It is sufficient for us to remark that this court have already decided that the plaintiff was not residuary legatee. In *Tappan* v. *Tappan*, 4 Foster's Rep. 403, the court hold the following language : " The other executor of this will, John W. Tappan, is not residuary legatee. The rest and residue of the estate ' in Claremont aforesaid, wheresoever being,' was given to him,

but neither the court of probate nor this court can know that this is the residue of all the estate."

It may be true, as suggested by the plaintiff's counsel, that " both parties in this action supposed that the plaintiff was residuary legatee, and that for some sixteen years this has been the practical construction of the will ;" but the erroneous suppositions of the parties cannot affect their legal rights. If the parties supposed the plaintiff to be residuary legatee, they also supposed the defendant to be co-executor, and as such, entitled to recompense for his services and expenditures; and upon that supposition the defendant expended large sums of money in behalf of the estate.

If the plaintiff will be compelled to go through the forms, and incur the expenses, of an administration, in consequence of a failure to recover in this suit the amount claimed in his second specification, we submit that by that process alone can the respective rights of these parties be determined, and exact justice be meted out to each.

2. But it is said by the plaintiff's counsel, that if the court hold that the plaintiff is not legatee of the entire residuum, under the will, still being only child and heir-at-law of the testator, he is so far residuary legatee that, upon giving bond to pay funeral charges, debts and legacies, the estate of the testator vested in him. And several cases from our own reports are cited to sustain this position.

We have examined these cases with attention, and have been utterly unable to perceive any bearing they can be supposed to have upon the proposition stated. In all of them, wherever a residuary legatee is mentioned, it is a legatee of the entire residuum. The law in relation to " residuary legatees," is cited by way of illustration merely, in one of the cases, and in neither of them is there the most distant allusion to any residuary legatee *sub modo*.

3. But before the plaintiff can avail himself of the doctrine of these cases, he must bring himself within them, and within the statute on which they are founded, by showing

that he is both executor and residuary legatee.   On the contrary, when this suit was brought, it is evident, by the decision of the court in the probate appeal, before alluded to, that he was neither the one nor the other.   It is only when the executor is also residuary legatee, and gives the required bond, that the estate vests in him, so as to require no further administration.   Comp. Stat. ch. 167, § 13; *Batchelder*, *Admr.* v. *Russell*, 10 N. H. Rep. 39; *Clark* v. *Tufts*, 5 Pick. 337.

II.   But conceding that the plaintiff was both residuary legatee and executor, so that the property vested in him, it does not follow, nor do the cases decide, that he could bring a suit in his own name to recover choses in action belonging to the estate.

The cause of action can, in no sense, be said to accrue to him in his own right.   He represents the estate, and the right of action must accrue to him, if at all, in his representative capacity.

In this case, the plaintiff sues for notes due to him in his own right, and also for the notes due to the estate of John Tappan.   For the reasons given, it would seem that he could not recover these last in his own name, even if he is to be held to be residuary legatee and executor.   Nor can he recover them in this suit, for the reason that it is an attempt to join a demand in his own right with one as representative of another.

The promise must be alleged previous to the death of the testator.   Oliver's Prec. 82;  Chitty's Pl. 151, 202; 2 Saund. 117.

III.   But another, and it seems to us, a complete answer to this action, so far as it relates to any thing due the estate of John Tappan, is found in the statute in relation to trustees of estates.   Act of June 21, 1820.   Rev. Stat. ch. 168.

The defendant, having never given bond as trustee, as required by the act, must be considered as having declined the trust.

Under the provisions of this statute, the plaintiff or the grandchildren of the deceased, who, by the provisions of the will, are entitled, eventually, to the principal of the $10,000 bequeathed in trust, may procure the appointment of a new trustee or trustees, to whom the defendant will be bound to account and deliver up all the estate which may have come to his hands by virtue of such trust. And by this means, the plaintiff can have a full and complete remedy to recover the unpaid interest which he claims under the provisions of the will.

Even if the plaintiff and defendant were both co-executors, we do not see how the plaintiff could sue his co-executor for the interest that might remain unpaid. His rights, as it seems to us, could only be enforced by taking the legal steps upon the defendant's bond as trustee.

IV. At any rate, the plaintiff can stand in no better position in regard to this action, than he could if the defendant was legally an executor. As the plaintiff's counsel suggests, he was appointed executor, and under the authority of the probate court, acted as such for sixteen years, and he cannot be made liable for a legacy in his hands until after demand made. *Prescott* v. *Barker*, 14 Mass. Rep. 428; *Miles* v. *Boyden*, 3 Pick. 213; *Mathes* v. *Jackson*, 6 N. H. Rep. 105. Here no demand is shown.

V. But upon what ground the plaintiff can attempt to recover of the defendant the $3716,94, we are at a loss to conceive. However it may be in regard to other property, vesting absolutely in him as residuary legatee, upon giving the proper bond, there can be no pretence that this trust fund vested absolutely in him. It belongs to him in no event. He has no more right to hold it as trustee than has the defendant. Nor is he any more than the defendant a trustee under the will. Neither party has ever given bond as trustee, and, in this respect, both stand in the same position. The defendant has just as much right to sue the plaintiff for the balance of the $10,000 in his hands, as the plaintiff

has to maintain this suit, in his own name, for that part of it in the hands of the defendant.

VI. The plaintiff's counsel cites section 10 of chapter 170 of the Compiled Laws, and contends that this suit, having been commenced by attachment, January 16, 1851, and the plaintiff, having filed his bond in the probate court, April 2d, 1851, it is within the purview of this provision.

It is sufficient, in reply, to remark that the plaintiff did not " commence his action as administrator thereof," but commenced an action in his own name and in his own individual right, for debts due to him in his private capacity. The attempt to claim as executor would seem to have been an afterthought.

In the original specification, no mention whatever was made of the debts due in *autre droit ;* and not till a year afterwards were those claims brought forward and a new specification filed.

EASTMAN, J. Much of the discussion, in this case, has been upon the question whether the plaintiff was residuary legatee of John Tappan, and most of the claims in controversy depend upon the decision of that question. But that point we regard as having been settled when these parties were before this court at a former time. It was decided in *Tappan* v. *Tappan*, 4 Foster's Rep. 400, that the plaintiff, in this action, was not made residuary legatee by the will of his father. Probably the fact stated in the auditor's report, that the plaintiff is the only lineal heir of John Tappan, induced the probate court the more readily to recognize John W. Tappan as residuary legatee, and to attempt to take bonds from him accordingly. And it may be that such was the intention of the testator. The language of the will, however, does not so make him, and the clause having once undergone a judicial construction, we are content that it should so remain. The testator may have had reasons, satisfactory to his own mind, for not making his son residuary

legatee of all his estate, even though as heir he would be-come possessed of the same property which he would have taken as residuary legatee. He may have thought it best that his estate should be more promptly settled by the re-turn of an inventory and the payment and collection of debts, than by the filing of a bond to pay debts and lega-cies. But this is only matter of speculation. We know nothing of the case except what appears from the papers, and we treat this point as settled, because it has once been considered and passed upon by this court.

The plaintiff cannot, therefore, recover in this action, brought in his own individual name, (on the ground of be-ing residuary legatee,) several of the sums specified in the auditor's report.

Whether the giving of bond by a residuary legatee vests the choses in action of the testator so completely in the legatee, as to enable him to collect them in his own individual name, need not be determined. The plaintiff, not being residuary legatee, that question does not necessarily arise in this case. It seems to have been settled, however, that by the giving of such bond by a residuary legatee, the property in the estate vests in the legatee, and that the only security for the payment of prior debts and legacies must be derived from the bond. *Batchelder, Admr.* v. *Russell & a.,* 10 N. H. Rep. 39; *Tarbell & a.* v. *Whiting,* 5 N. H. Rep. 63; *Clark* v. *Tufts,* 5 Pick. 337. In *Tarbell* v. *Whiting,* the court say, " as soon as the executor had given bonds to the judge of probate, to pay the debts and legacies, all of the estate of the testator, not specifically devised to others, vested in the executor absolutely."

But where an executor is not residuary legatee, and the estate is settled in the ordinary course, by returning an in-ventory, the personal property of the deceased is not distri-buted among the heirs till after the administrator or execu-tor shall have settled his account in the probate court. It then, and not before, passes into the hands of the heirs, by de-

cree of the judge of probate.    Rev. Stat. ch. 166, § 5.    No such decree had been passed when this suit was instituted.

But should we hold the plaintiff to be residuary legatee by the appointment of the will, he was not such by the authority of the probate court, at least till April 2d, 1851, when he gave his new bond.    The bond which he gave before clothed him with no power.    This was decided in *Tappan* v. *Tappan*, 4 Foster's Rep. 400, before cited; and this suit was commenced before the new bond was given, and before his legal appointment as executor.

And even could he hold the personal estate as heir, so as to enable him to collect the choses in action of the deceased, in his own name, after a settlement of his account as executor, without any decree of distribution, he still encounters another difficulty.    He settled his account as executor, May 21, 1851, and this suit was instituted January 16, 1851.    He must recover according to the legal rights and liabilities of the parties existing at the time the action was commenced; and at that time he was not clothed with any legal power as executor, nor had he, as heir, any rights which he could then enforce against the defendant by a suit at law.

The clause of the statute referred to by the plaintiff's counsel, (Rev. Stat. 161, § 10,) providing that any person interested in the estate of any one deceased, may commence an action as administrator, &c., does not apply to a case of this kind.    This action was commenced by the plaintiff, individually, and he seeks to recover in his individual capacity, and not as administrator or executor.    In order to come within the provisions of that statute, he should have commenced his suit as executor.

According to these views, which might be more enlarged upon if it were necessary, the plaintiff will be entitled to recover only the amount of the three notes first named in the specification, being given directly to him in his individual capacity.    The action was brought by him in that capacity, and the only undertaking by the defendant to him, as an

individual, was upon these notes. All the other matters of the plaintiff's claim, except the interest on the $3716,94, are mainly dependent upon the question of his being residuary legatee and executor, and cannot be recovered in this form of action.

As to the interest on the $3716,94, which remained unpaid at the time of the commencement of this suit, that was given directly to the plaintiff by the will, after the decease of the plaintiff's mother, and was a legacy to him. But a legacy cannot be recovered till after demand made for the same. *Payne* v. *Smith*, 12 N. H. Rep. 34; *Miles* v. *Boyden*, 3 Pick. 213; *Prescott* v. *Barker*, 14 Mass. Rep. 428. And here was no demand shown.

It is unnecessary to decide, therefore, whether this interest can be recovered in this form of action; but we would suggest a doubt whether, as these parties were co-trustees of the fund producing the interest, any action at common law can be maintained for it; and whether all proceedings in regard to this fund between these parties, or the interest arising therefrom, must not be in equity. Without examining this point particularly, such is our impression.

With regard to the set off, that must be governed by the same principles that have been applied to the claims of the plaintiff. None of the matters growing out of the trustee fund, nor any of the charges connected with the estate of John Tappan, can be allowed in this action. All that the defendant is entitled to have set off are the three items of $25, $47,50 and $121,50, as allowed by the auditor. Judgment must, therefore, be entered for the plaintiff, for the amount of the three notes first described in the specification, with interest, deducting therefrom the three items of set-off, with interest on the same, as stated by the auditor.

The other maters in controversy between the parties must be the subject of future adjustment or litigation. They cannot be recovered or allowed in this action.