[No. 9,244. In Bank.—July 26, 1884.]

## THE LYTLE CREEK WATER CO., APPELLANT, v. A. G. PERDEW ET AL., RESPONDENTS.

WATER—APPROPRIATION AND DIVERSION—TRESPASS—INJUNCTION. — Where different persons separately appropriate the waters of a stream, and are severally using the same under certain regulations as to the time and manner of such use, they are tenants in common, and each of them may maintain an action to enjoin a trespasser from diverting any portion of the water thus appropriated.

APPEAL from a judgment of the Superior Court of San Bernardino County.

The facts are stated in the opinion of the court.

*Byron Waters*, for Appellant.

*Satterwhite & Curtis*, for Respondents.

THORNTON, J.—The court rendered the following decision:—

"*First*—That at various times since about the year 1854, a large number of persons owning and occupying separate tracts of land, consisting of farms on the Rancho of San Bernardino, and other farms immediately to the north and west of said rancho, and residence lots and gardens, orchards, and vineyards, in the town of San Bernardino, diverted and appropriated the waters of Lytle Creek by means of water ditches and dams, and conducted such waters upon their said lands for irrigating the same, and for household and domestic use thereon.

"Such appropriations were usually made by persons owning and occupying lands in the same vicinity or neighborhood, acting in concert for their common benefit in appropriating a portion of the waters of the creek into a main ditch to be conducted to their neighborhood, and thence through distributing ditches to their respective and individual tracts of land.

"*Second*—That within about two years after 1854, and before the end of the year 1856, by means of several such appropriations mentioned in finding i., all of the waters of said Lytle Creek had been so diverted and appropriated, and have ever since been appropriated and used for irrigation and household and domestic uses upon the lands aforesaid, and other lands occupied and cultivated by defendants, as hereinafter stated.

"*Third*—That such waters so appropriated and used were used by the various persons who appropriated the same, and those claiming to be their successors, by turns, separately and consecutively, each upon his separate land for a certain length of time, measured by hours and minutes, under the regulations of the board of water commissioners of this county, and the overseers of ditches prescribing how often and the length of time each should be entitled to use the same, varying in time according to the extent of interest each held in the waters so appropriated, except, however, that one George Lord, one of the first appropriators, has always to the present time, used said water upon his farm of about forty acres, whenever his needs required it at any time, under a claim of right so to do.

"Such separate interests in the water were held by the individuals separately, and sold, transferred, or abandoned by them respectively at their will.

"*Fourth*—That in June, 1867, the defendant A. G. Perdew settled upon and has ever since resided upon and cultivated a tract of government land near said Lytle Creek, and within the flow of the same, but lying above the aforesaid lands of original appropriators mentioned in finding i., and about the time of his said settlement thereon he diverted and appropriated from said Lytle Creek a stream of water through a ditch constructed by him, for the purpose of irrigating his said land, and for household and domestic uses thereon, and he has ever since conducted, appropriated, and used such stream of water upon his said land to irrigate the same and crops thereon, and for household and domestic purposes.

"*Fifth*—That the plaintiff was, at the commencement of this action, the owner through mesne conveyances and transfers of certain interests in, or a portion of the waters of said Lytle

Creek, appropriated as aforesaid prior to the time that said defendant A. G. Perdew made his appropriations aforesaid in 1867, as mentioned in finding iv., equal in amount to the use of all the waters of said creek one hundred and twenty-four· hours and nineteen minutes out of each and every three hundred and seventy-two hours; and since the commencement of this action, and before filing the supplemental complaint herein, the plaintiff has acquired and now owns through mesne conveyances an additional interest in, or portion of said waters, conveyed to it directly by one E. H. Morse, appropriated as aforesaid prior to the aforesaid appropriation of said defendant A. G. Perdew, equal in amount to the use of all the waters of said creek, eight hours out of each three hundred and seventy-two hours, making in all an amount equal to the use of all the waters of the creek one hundred and thirty-two hours and nineteen minutes in each three hundred and seventy-two hours, or in other words, in the same proportion to the constant flow of the whole stream as the period of one hundred and thirty-two hours and nineteen minutes is to three hundred and seventy-two hours. But the said appropriation and use by defendant A. G. Perdew is prior in time to any other right or interest of the plaintiff.

"*Sixth*—That such appropriation by the defendant A. G. Perdew was not made with the consent of plaintiff or any of its grantors or predecessors in interest, through whom it derives its aforesaid interest in said waters which it now owns as aforesaid, and said defendant did not appropriate, and has not used said water with intent to deprive any prior appropriator of any of said waters, or the successors in interest of any of such prior appropriators, of any of the said waters which had been previously appropriated, and his use of said waters and right to use the same has been several times, to wit, more frequently than· once in five years, since his appropriation thereof, interrupted and disputed by others of the said original appropriators and their successors in interest.

"*Seventh*—That in the year 1879, the defendants, A. G. Perdew, G. F. R. B. Perdew, and R. P. Perdew, constructed in what is known as South Fork Cañon, but designated in the answer as Dry Cañon, and in Grapevine Cañon, flumes for the

purpose of carrying water, and which did carry water flowing in said South Fork Cañon to the amount of about fifty-eight inches under a four-inch pressure, and in said Grapevine Cañon to the amount of about ten inches under a four-inch pressure, and conducted such water through said flume into the main streams of Lytle Creek aforesaid, above where any of the water is diverted from said creek as aforesaid. The lands upon which said flumes are constructed, and upon which the streams in said cañons were flowing, are unsurveyed public lands of the United States, and unoccupied except by such flumes.

"*Eighth* — That all the waters in said two cañons, and all of that which was conducted through said flumes into the main streams of Lytle Creek as aforesaid, have, before said fluming by defendants, always naturally flowed into the said main streams of Lytle Creek and constituted tributaries of the same, and the quantity of water in said Lytle Creek has not in any manner been increased by reason of the fluming of the waters from said cañon by defendants as aforesaid.

"*Ninth*—That in addition to the aforesaid appropriation by A. G. Perdew in 1867, as stated in finding iv., and ever since the construction of the aforesaid flumes by defendants, as stated in finding vii., the said defendants have diverted from said Lytle Creek, and used upon their respective farms, as alleged in their answer, an amount of water equal to that flowing through their said flumes into the main streams of Lytle Creek as aforesaid, and if not restrained will continue so to do.

"*Tenth* — That the amount of water or water interest owned by the plaintiff at the commencement of this action, as set forth in finding v., was composed of several separate interests which it had acquired at different times from the various owners thereof, previously held and owned by them in severalty, as stated in finding iii., and the plaintiff has never in any manner been allotted any particular time or times during which it should use the aforesaid portion or quantity of the waters belonging to it.

"*Eleventh*— That the said Lytle Creek, water ditches, lands, and premises, mentioned in the foregoing findings, are all situated in the county of San Bernardino, State of California."

As conclusions of law the court decides:—

"That the defendants, A. G. Perdew, G. F. R. B. Perdew, and R. P. Perdew are not, nor are any of them, entitled to divert or take out of Lytle Creek, any water as the equivalent of the water conducted into the main stream of said creek through the flumes constructed by them in the South Fork Cañon, designated in their answer as 'Dry Cañon,' and in Grape-vine Cañon, and that they be perpetually enjoined from divert-ing or taking out any water from said creek as such equivalent, or by virtue of conducting the aforesaid waters from or through the said cañons or either of them into the said creek. Also, that the defendants, G. F. R. B. Perdew, and R. P. Perdew have no right, title, or interest in or to the waters of said Lytle Creek, or the use thereof, and they and each of them, the said G. F. R. B. and R. P. Perdew, be perpetually enjoined from diverting, obstructing, or in any manner interfering with the waters of said Lytle Creek or any part thereof, or the regular and constant flow of the same by virtue of any right, title, or interest heretofore acquired or held by them or either of them.

"Also, that plaintiff is the owner of an interest in or portion of the waters of said Lytle Creek, equal in amount or quantity to the use of all the waters of said creek one hundred and thirty-two hours and nineteen minutes out of each and every three hundred and seventy-two hours, that is to say, in the same proportion to the constant flow of the whole stream as the period of one hundred and thirty-two hours and nineteen minutes is to three hundred and seventy-two hours.

"Also, that plaintiff recover from said defendants, A. G. Per-dew, G. F. R. B. Perdew and R. P. Perdew, its costs of this action necessarily expended or incurred. That judgment be entered accordingly."

A decree passed accordingly.

The court, as will be perceived from the foregoing, granted the relief desired against G. F. R. B. Perdew, and R. P. Per-dew, and granted it partly against A. G. Perdew. The action was dismissed as to Hackney.

The appeal by plaintiff brings up that part of the decree which relates to A. G. Perdew; and we see no reason why on the find-ings of fact it is not entitled to an injunction against him as well

as the other defendants.   The entire waters of Lytle Creek had been appropriated prior to any appropriation by A. G. Perdew. Under those prior appropriators, the plaintiff held.   The defendant just mentioned was a trespasser, using the waters of the creek without any right whatsoever.   Why a lawful appropriator should not be entitled to an injunction against a trespasser, we cannot perceive.   It is said that the waters are appropriated severally by those who did appropriate them.   Concede this to be so, and we do not perceive that it makes any difference.   If they are tenants in common of the water, such tenants and each of them are tenants, seized *per my* and not *per tout*, and entitled to the possession of the whole.   This must be so, because no one of them can certainly state which part of them is his own.

They hold by unity of possession, though their titles be distinct.   If this unity is destroyed, the tenancy no longer exists. (See 2 Blackst. Com. 191, 192; *Carpentier* v. *Webster*, 27 Cal. 524.)   In the case just cited from 27 Cal., it is held that each and every such tenant has the right to enter upon and occupy the whole of the common property and every part thereof. (27 Cal. 545.)

It is said in *Williams* v. *Sutton*, 43 Cal. 71, that each tenant in common is seized *per my et per tout;* such a tenure would make each tenant a joint tenant.   (2 Blackst. Com. 182.)   Concede this to be so, and the view we take herein receives additional force.

"A person without title, and wrongfully in the possession, cannot gainsay the right of each of the tenants in common to the possession of the whole.   As between tenants in common and a trespasser, each tenant in common is better entitled to the possession than a wrong-doer."   (Per Crockett, J., 43 Cal. 71.) He can maintain an action against a trespasser and recover possession of the whole estate held in common.   This being so, it follows that he can take steps to protect the whole.   It would be an anomaly in the law if such tenant could recover the whole property from a wrong-doer, and could not alone intervene to protect it from nuisances and trespasses which can be redressed by the preventive process of injunction.

Whether joint appropriators, holding the estate as joint tenants, or tenants in common, the same is the result.   Each can recover

the whole, or take the necessary steps to protect the whole against the acts of a wrong-doer.

It is found that the interest of plaintiff in the waters of Lytle Creek, derived from some of the first appropriators, is equal to the use of all the waters of the creek one hundred and twenty-two hours and nineteen minutes in three hundred and seventy-two hours (see finding v.); that these waters, so appropriated and used by the first appropriators, were used by the persons so appropriating the same and their successors, by terms separately and consecutively, each upon his own land, for a certain length of time, under the regulations of water commissioners and the overseers of ditches, prescribing how often and the length of time each person should be entitled to their use, varying in time according to the extent of interest each held in the waters so appropriated (see finding iii.), with one exception which need not be further mentioned, that such separate interests in the waters were held by the individuals separately, and sold, transferred, or abandoned by them each at his will (finding iii.); that the amount of water interests owned by plaintiff was composed of several separate interests which it had acquired at different times from the various owners thereof, previously held and owned by them in severalty as stated in finding iii., but the plaintiff has never in any manner been allotted any particular time or times during which it should use the portion or quantity of the water belonging to it. (Finding x.) This finding is singular in this: It would seem from the preceding findings that such allotment had been made to the parties under whom plaintiff derives title. This being so, why does it not take the places and times of its grantors?

But if the time or times had not been fixed or allotted to plaintiff, how does that concern defendant A. G. Perdew? He is a trespasser on the rights of plaintiff and each and all of his co-tenants. Perdew is using the waters without right, and claims to use them at all times, against all others. (Finding iv.) No limit as to time of use is found as to him. It would be strange if one tenant in common could not enjoin a threatened injury. (*Van Winkle* v. *Curtis*, 2 Green Ch. 422.) What has he to do with the circumstance, that the time or times when plaintiff is entitled to use these waters, has not, as between him and his

co-appropriators, been fixed in any way? This arrangement as to the periods of user concerns only the co-tenants, is made for their convenience and benefit, to avoid disputes between them, and for carrying out in an orderly manner their employment of those waters. The fact that Perdew is trespassing on the rights of plaintiff is sufficient to entitle it to relief.

It is urged that inasmuch as it does not appear that A. G. Perdew is using the water during the period the plaintiff is entitled to use it, that he is inflicting no injury on its rights. How can this be said? He is claiming to use the water at all times, and will no doubt use it unless restrained by an order or decree of the court.

Suppose the time of plaintiff's use was fixed, and A. G. Perdew used water up to within a minute of the time that plaintiff was entitled to use it. According to this contention, Perdew would be violating no right of plaintiff. But can it be said that he is not then injuring plaintiff? Observe, this defendant is using it when another or others of the appropriators have a right to use it and may be using it. Can it then be said that he is not taking out more water than the appropriators, entitled to use it, are allowed to take out? And is he not then diminishing the water which would come to the plaintiff?

We cannot allow any force to this argument. The contention we think is untenable.

The co-tenants are entitled to use all the waters, and when an outsider diverts any from them or any one of them, he is injuring all and each one of them. He may be doing more injury to the one entitled to use it at the time he is diverting it, but he is at all times when diverting, guilty of a trespass on the rights of each and every one of them, and each of them has a right to have the preventive power of a court of justice to put a stop to his illegal acts.

It is urged that all the co-tenants must be before the court, and all their rights adjudicated before plaintiff is entitled to relief. Why, we cannot see. There was no dispute as to the rights of the co-tenants. Plaintiff makes no complaint as to them or any of them. The rights of each are set forth in the findings, and plaintiff makes no complaint as to the findings or decree in this regard.

The decree, if in favor of plaintiff, affects no rights of his co-

owners. It cannot be pleaded against them or any of them. It is only where the court cannot determine the controversy between the parties before it without prejudicing the rights of any of the co-owners, or of any other person, that other parties must be brought in. When the contest can be settled without affecting the rights of others, there is no ground or reason for bringing in any other parties. Nor is such procedure required by section 389 of the Code of Civil Procedure. (*Settembre* v. *Putnam*, 30 Cal. 497; *Van Bokkelen* v. *Cook*, 5 Sawy. 587.)

That the act complained of here is a nuisance, see Civil Code, section 3479. That any person affected as the plaintiff is, can maintain the action, see Code of Civil Procedure, section 731. Where three out of forty-seven tenants in common filed a bill for an injunction to restrain the digging of stone on the common property, an objection for want of parties was not allowed. (*Ackroyd* v. *Briggs*, 14 Week. R. 25; 2 Joyce Injunctions, 1348; *Waring* v. *Crow*, 11 Cal. 366.)

In our judgment the plaintiff is entitled to the decree of the court enjoining A. G. Perdew from the diversion of any of the waters of Lytle Creek, under the appropriation of 1867, as set forth in finding iv., or any other diversion or obstruction of such waters subsequent to the inception of the interest owned by plaintiff and declared in the findings.

The judgment is reversed as to A. G. Perdew, and the cause remanded with directions to the court below to enter a judgment in favor of plaintiff and against A. G. Perdew, as follows: That A. G. Perdew be perpetually enjoined from diverting, obstructing, or in any manner interfering with the waters of said Lytle Creek, or any part thereof, or the regular or constant flow of the same, by virtue of any right, title, or interest claimed or held by him under any appropriation or claim of such waters made by him, any time subsequent to the appropriation of plaintiff or of those from whom it derives title prior to June, 1867. The court below is further directed to execute the decree by mandatory or prohibitory injunction, as may be found necessary. (See Gould on Waters, § 552, and cases cited.) In other respects the judgment is affirmed.

SHARPSTEIN, J., MYRICK, J., and ROSS, J., concurred.