### RODGERS v. PITT et al.

#### (Circuit Court, D. Nevada. June 27, 1898.)

#### No. 658.

1. WATER RIGHTS—ENJOINING DIVERSION OF WATER—PARTIES.
   One of a number of owners in common of a dam, flume, and irrigating ditch, who, by agreement, divide the water flowing in the ditch between them, may alone maintain a suit to enjoin the diversion by a subsequent appropriator of any portion of the water to which either he or his cotenants are entitled.

2. SAME—MANNER OF USE—CUSTOM.
   In determining the amount of water which a user applies to a beneficial use, and to which he is entitled to the prior right, the system of irrigation in common use in the locality is to be taken as the standard, though a more economical method might be adopted.

This is a suit in equity to enjoin the diversion of water from a dam and irrigating ditch of which complainant is a part owner. Heard on motion for a temporary injunction.

Robert M. Clarke and Charles W. Slack, for complainant.
J. W. Dorsey and R. R. Bigelow, for defendants.

HAWLEY, District Judge (orally). Thies, Carpenter, and Rodgers own separate tracts of land in Lovelock Valley. Long prior to 1883

the owners of these separate tracts of land had acquired separate rights in various ditches and sloughs, for the purpose of conveying water to irrigate such portions of their lands as could be cultivated, etc. In 1883 they united together for the purpose of obtaining the water necessary to irrigate their respective lands from a common source. To this end they constructed the Marker dam, flume, and ditch, and by means thereof diverted the waters of the Humboldt river to and upon their lands for irrigating purposes. The interests of the owners of these respective tracts of land in the ditch and water flowing therein were, by agreement of the parties, divided as follows: Thies is entitled to $3/24$, Carpenter to $7/24$, and Rodgers to $14/24$. Rodgers brings this suit to enjoin Pitt and others, who are subsequent appropriators of the water from the river, from diverting any of the water which he and his co-tenants, Thies and Carpenter, are entitled to have flow through the Marker ditch, for the purpose of irrigating their respective lands. A restraining order was issued. Upon the rule to show cause why a temporary injunction should not be issued, the defendants deny the right of Rodgers to maintain this suit or to obtain an injunction, except as to the amount of water needed and required for a beneficial use for the irrigation of his own cultivated lands.

Can Rodgers, as a co-tenant in the Marker dam, flume, and ditch, and the waters flowing therein, enjoin defendants from diverting any portion of the waters used by his co-tenants? I am of opinion that this question must be answered in the affirmative. Thies, Carpenter, and Rodgers, by virtue of their ownership in the ditch, might agree among themselves that, instead of using their proportionate share of the waters flowing therein all the time on their land, each should take all the water a part of the time. They could agree that Thies should have all the water for 3 days out of 24; that Carpenter should have it all for 7 days out of 24; and that Rodgers should take it all for 14 days out of 24. In the event of any litigation between themselves as to their respective rights, a court of equity would have the unquestioned power to make such a decree, if it fairly represented their respective rights as to the use and necessity of the water to irrigate their respective lands. This being true, it follows that each has such a unity of possession of the ditch and water flowing therein as to entitle either of them to bring suit, and enjoin any diversion of the water, by a trespasser, to which they are all entitled. There is no absolute necessity of making all the co-tenants in the ditch parties to such a suit. The defendants are not in a position to complain. They admit they are subsequent appropriators of the water of the river. What difference would it make to them as to the agreements made between Thies, Carpenter, and Rodgers, each of whom are admitted to be prior appropriators of the water, as long as such agreements do not result in giving to either any greater quantity than he is entitled to, under the law, to irrigate his own lands? There are certain phases of this question, hypothetical in their nature, which were suggested by counsel as to the conditions that might arise, which I deem it unnecessary to refer to. The question, on this hearing at least, should be disposed of upon the existing conditions, without at-

tempting to borrow trouble which may never arise. It is deemed enough to say that my conclusion is that the complainant's position should be sustained.

The case of Water Co. v. Perdew, 65 Cal. 447, 454, 4 Pac. 426, which was cited by this court in Mining Co. v. Dangberg, 81 Fed. 73, 87, is directly in point in so far as the legal principle is involved. In that case the entire waters of Lytle creek had been appropriated by a large number of persons owning separate tracts of land, prior to any appropriation by the defendant, A. G. Perdew. The appropriations were generally made by persons owning land acting in concert, for their common benefit, in appropriating portions of the waters of the creek into a main ditch to be conducted to their neighborhood, and thence, through distributing ditches, to their respective lands. Defendant, Perdew, was a trespasser, using the waters of the creek without any right whatever. It was there, as here, contended that all the co-tenants in the waters of the creek must be before the court, and their respective rights adjudicated, before complainant is entitled to any relief. The court held otherwise, and, among other things, said:

"The co-tenants are entitled to use all the waters, and, when an outsider diverts any from them or any one of them, he is injuring all and each one of them. He may be doing more injury to the one entitled to use it at the time he is diverting it; but he is, at all times when diverting, guilty of a trespass on the rights of each and every one of them, and each of them has a right to have the preventive power of a court of justice to put a stop to his illegal acts."

See, also, Kin. Irr. § 301.

As to the amount of water diverted, appropriated, and needed for beneficial use in the irrigation of the lands, a wide range was taken in the introduction of evidence with as much minuteness of detail as if the case had been on trial upon its merits. It became apparent to the court at the commencement of this hearing that both parties were to some extent at sea as to what would be claimed and contended for by the opposite party. This condition of affairs, in part, resulted from the fact that defendants had not filed any answer. They, doubtless, preferred to first glean from the evidence the character of the issues which they might deem proper to present by an answer or cross bill. Moreover, it was claimed by the defendants that the averments in the bill and the form of the restraining order were not such as to advise them with reference to the contention of complainant as to his right to maintain this suit as a co-tenant with Thies and Carpenter in the Marker ditch. The entire history and condition of the country, the climate, the soil, the seasons, the river, the sloughs, the water courses, the character of the lands and crops grown thereon, the time and manner of irrigation from the early 60's to the present time, were, like the alkali in certain portions, brought to the surface, exhibited to public view, and made the subject of legal comment, review, and criticism. There was a decided conflict of opinion as to the carrying capacity of all the different ditches, and especially as to the Marker ditch and flume; but the lowest carrying capacity of this ditch and flume is in excess of the amount of water actually

claimed to have been used on the Thies, Carpenter, and Rodgers tracts. Witnesses were examined as to the specific sections of the Rodgers tract; to what purposes they were first devoted; changes that had been made; the amount of water used on each, for each specific year, for over 20 years; the full amount of water appropriated and used each year on all or any portion of each section. Theories were also advanced as to how much water was needed and required to properly irrigate the cultivated lands, etc.

The order granted by the circuit judge restrained defendants—

"From diverting or in any manner using the waters of the said Humboldt river, or any portion thereof, so as in any manner to prevent 5,000 inches thereof, measured under a four-inch pressure, from flowing in the natural channel or bed of said river to the head of complainant's ditches, or so as in any manner to deprive the complainant of the use of 5,000 inches of said water, measured under a four-inch pressure, for the irrigation of his said land and the crops growing thereon, and for watering his stock, and for his domestic uses."

Pending the hearing, on complainant's motion, this order was modified by reducing the amount of water to 3,500 inches, miner's measure.

There are certain prominent facts which must control the decision of the court on this hearing. The defendants' right to appropriate any water from the Humboldt river was not acquired until the fall of 1888. Complainant's rights, as well as those of Thies and Carpenter, his co-tenants in the Marker ditch, were acquired many years prior to that time. There was as much land irrigated on the Rodgers tract prior to 1888 as was irrigated during the present year; but not as much land cultivated for crops of grain and alfalfa, more land being used and irrigated in the earlier years for pasture and grass, and less for crops, than in the later years. The amount of land cultivated in grain and alfalfa, at the time this suit was brought, on the Rodgers tract, is 2,127 acres; the amount on the Carpenter tract is 976 acres; the amount on the Thies tract, 544 acres,—making a total on the three tracts of 3,647 acres. Applying the principles announced in Barnes v. Sabron, 10 Nev. 217, 243, and in Mining Co. v. Dangberg, supra, I am of opinion that the rights they acquired to the water prior to the inception of defendants' rights, in 1888, entitled them, under all the facts of the case, to at least the quantity of water needed to irrigate that amount of land in their respective tracts, and to have the same flow through the Marker ditch.

It only remains to determine the amount of water required to irrigate the land under the system in vogue among the farmers in Lovelock Valley. The system, briefly stated, is that of using irrigating ditches, generally of uniform size and dimensions, and flooding the land, controlling and changing the water at different times during the day, and allowing it to take care of itself during the night, letting it run where it is supposed it will do the most good and least harm. This system is, perhaps, an easy and inexpensive one, but must necessarily result in a waste of the water which might, by the adoption of other systems,—more expensive at the start, but cheaper in the end,—be avoided, and enable the farmers to irrigate a much greater quantity of land with a less amount of water. But the system referred to is

in universal use by the farmers in that district of country, and it is the duty of the court, in the absence of any law upon the subject, to determine the amount of water by a reference to the system used. Upon this point there is a conflict of opinion. The witnesses on behalf of complainant place the quantity at one inch to the acre; the defendants generally at about one-half an inch to the acre, some placing it, however, as low as one-quarter of an inch to the acre. The great weight of the testimony, however, is to the effect that one inch to the acre is required to properly irrigate the cultivated lands. The defendants offered testimony to the effect that they would be satisfied with one-half an inch to the acre, and that that quantity was all that was required. The fact, however, is that during the early part of this season all the farmers taking water from the Pitt ditch used 3,400 inches of water to irrigate about 3,000 acres of land, and there were more or less dissensions between them as to their not having their proportion or sufficient quantity of water to properly irrigate their lands. A surveyor was employed, and measurements made, showing, with but one or two exceptions, that each party was only using his proportionate share of the water. Under all the testimony, circumstances, and conditions under which this case is flooded, I do not feel justified, certainly not on this hearing, in placing the amount needed and required for a beneficial use at less than one inch to the acre. My conclusion, therefore, is, without entering into any details as to the facts, that the complainant is entitled to have a temporary injunction, in due form, issue, restraining defendants from diverting or in any manner using the waters of the Humboldt river so as to prevent 3,500 inches thereof, measured under a 4-inch pressure, from flowing in the bed of the river to the head of complainant's ditch, during the irrigating season, until the trial of this case, upon filing a bond in the sum of $5,000, approved by this court.