[L. A. No. 375.  Department One.—October 6, 1898.]

FRANK D. LEWIS, Plaintiff, v. S. B. FOX et al., Defendants and Cross-complainants, Respondents.  MARY E. ARMSTRONG, Executrix, et cetera, et al., Appellants.

CROSS-COMPLAINT—ACTION QUIETING TITLE TO WATER RIGHT—CONTROVERSY WITH THIRD PARTIES.—In an action to quiet title to water flowing from artesian wells situated on lands deeded by a water company to the plaintiff, defendants, whose claim of title to part thereof might be determined upon the complaint and answer, cannot maintain a cross-complaint against third parties, upon a provision in a contract with plaintiff's grantor, to which plaintiff was not a party, and which formed no part of the controversy, by the terms of which such defendants were guaranteed a supply of water from another and distinct source not involved in the action, in case the supply granted to them from the artesian wells should prove insufficient.

ID.—NEW PARTIES TO CROSS-COMPLAINT.—While new parties may be brought in upon a cross-complaint, their presence must be necessary to the full determination of the rights of the parties then before the court, touching the property in litigation between them; and new parties cannot be brought in upon a cross-complaint, where the property involved is not the same, and the plaintiff is not interested in or affected by the questions or property to which the cross-complaint relates.

ID.—INSUFFICIENT GROUND OF CROSS-COMPLAINT—CONTINGENCY OF GUARANTY NOT SHOWN.—The cross-complaint does not state an existing

cause of action upon the guaranty of a supply of water from another source, in case the supply granted from the artesian wells should prove sufficient, where it shows an existing right to the artesian water granted as against the plaintiff, and that it has been in the enjoyment and use thereof from the date of the grant, and does not allege that any contingency had arisen which would entitle the cross-complainants to demand a supply from another source.

ID.—PREMATURE CAUSE OF ACTION—PENDENCY OF FORECLOSURE OF MORTGAGE.—The allegation of the mere pendency of foreclosure proceedings upon a mortgage executed prior to the grant of artesian water to the cross-complainants, supposing that a sale thereunder would constitute such a contingency as would entitle them to a supply from another source, does not show such a contingency, or show any cause of failure to obtain the artesian water granted, at the time of the filing of the cross-complaint.

ID.—SUPPLEMENTAL CROSS-COMPLAINT—DEED UNDER FORECLOSURE.—Where the original cross-complaint failed to constitute a cause of action, it cannot be supplied by a supplemental cross-complaint alleging a sale and sheriff's deed of the artesian water right under foreclosure of the prior mortgage, thereby depriving cross-complainants of the water granted them from the artesian wells, and ousting them therefrom.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial. John L. Campbell, Judge.

The facts are stated in the opinion.

A. R. Metcalfe, Goodcell & Leonard, F. W. Gregg, and Frank B. Daley, for Appellants.

Gibson & Titus, for Respondents.

HAYNES, C.—This action was brought May 1, 1893, by the plaintiff against S. B. Fox and a large number of others, as defendants, alleging that he is the owner of lots 7 and 8 in block 25 of the rancho San Bernardino; that upon said lots there has been developed, by artesian wells, eighty-four inches of water, continuous flow, measured under a four-inch pressure; that such amount of water is now flowing from said wells; that out of said quantity the first thirty-five inches, and the right to the use and control of the same, is owned by parties other than the parties to this action; that the right to the use and control

of the same is prior and paramount in right to any other waters that now are, or hereafter may be, derived from said land; that the remainder of said eighty-four inches of water, namely, forty-nine inches thereof, and the right to use and control the same, is owned by plaintiff; that defendants, and each of them, claim some right, title, or interest in and to said forty-nine inches adversely to the plaintiff; that their claim is without right, et cetera, and asks to have his title to said forty-nine inches quieted.

S. B. Fox and fifteen others of defendants, severing from the remaining defendants, answered the complaint, and admit that eighty-four inches of water had been developed by artesian wells on said land, "but deny that eighty-four inches of water, measured under a four-inch pressure, has been since the commencement of this action or is now flowing from said wells"; admitting that the first thirty-five inches was owned by the Terrace Water Company (not a party to the suit), denying plaintiff's ownership of the land and of said forty-nine inches of water, and alleging their own right to thirty inches of said forty-nine inches of water from said source.

In addition to this answer, they filed a cross-complaint against the plaintiff, and the Vivienda Water Company (a corporation), Shirley C. Ward, and A. C. Armstrong (whom they prayed might be brought in as parties to the action), alleging, in substance, the following facts, among others, viz.: That in 1887 certain parties, of whom Ward was one, formed a corporation known as the Vivienda Water Company, and conveyed to it through said Ward said lots 7 and 8 named in the complaint, and through others lot 9 in the same block; that prior to said conveyance said Ward mortgaged said lots 7 and 8 to one Donovan to secure his promissory note for two thousand dollars, payable July 8, 1889, which note and mortgage were afterward assigned to the Terrace Water Company, a corporation, said corporation being then the owner of said first thirty-five inches of water flowing from the artesian wells on said lots 7 and 8; that said corporation commenced a suit to foreclose said mortgage in January, 1891, and said action was still pending; that said Vivienda Water Company was also the owner of one hundred and forty-eight and one-half inches of water from another source

known as the "Meeks Mill and Garner properties," and on December 6, 1887, entered into a contract with certain of the defendants, and conveyed to them thirty inches of water flowing and derived from the artesian wells on said lots 7 and 8, and an interest in the pipe line conveying the water to the grantees' lands; that it was further provided that in the event that at any time the supply of water at the artesian wells should be insufficient to supply the said thirty inches of water, then the same should be supplied from its other source of supply, viz., the Meeks mill and Garner properties.

The cross-complaint further alleged that on March 22, 1892, the Vivienda Water Company conveyed said lots 7 and 8 to the plaintiff, Frank D. Lewis, but that the conveyance was without consideration, and that Lewis took with notice of their rights, et cetera.

Also, that on May 4, 1891, the Vivienda Water Company, disregarding its obligation to furnish to cross-complainants said thirty inches of water from the Meeks mill and Garner property in case of the failure of the wells on lots 7 and 8, conveyed said one hundred and forty-eight and one-half inches, which it owned in the Meeks mill and Garner property supply, to said Shirley C. Ward, and that said Ward conveyed approximately one-half thereof to A. C. Armstrong, one of the parties brought in by said cross-complaint, and charged that both Ward and Armstrong took with knowledge of the cross-complainants' right and title to said thirty inches of the said one hundred and forty-eight and one-half inches.

Pending the action A. C. Armstrong died, and his executrix, Mary E. Armstrong, was substituted, and she and Shirley C. Ward separately answered the cross-complaint. The Vivienda Water Company made default.

In addition to her answer, Mary E. Armstrong filed a cross-complaint against P. A. Raynor, the Rialto Irrigation District, and A. McBean, and these parties were brought in, and said district and McBean answered her cross-complaint, but the allegations of these several pleadings need not be stated further than to say that they all relate to the question of the liability of P. A. Raynor, Mrs. Armstrong, executrix, the Rialto Irrigation District, and A. McBean to the first cross-complainants, S. B. Fox

et al., for the thirty inches of water originally contracted to be supplied by the Vivienda Water Company from the artesian wells on lots 7 and 8.

Final judgment of foreclosure of the Donovan mortgage in favor of the Terrace Water Company was entered August 6, 1894, and said lots 7 and 8 were sold thereunder in September, 1894, to said Terrace Water Company; and Lewis, the plaintiff in this action, not having redeemed said lots from said sale, a deed therefor was executed to said Terrace Water Company on March 23, 1895, and thereupon it filed a complaint in intervention, praying that it be adjudged the owner in fee of said lots and of all the water, et cetera, and that the defendants in intervention (the plaintiff and the original defendants) are without right, title, or interest therein; and upon the hearing it was so adjudged. The findings and decree were filed May 2, 1896, and are to the effect that the defendants and cross-complainants named therein are entitled to the perpetual use of thirty inches of water from the Meeks mill and Garner properties; that subject to said right of cross-complainants, the estate of A. C. Armstrong is the owner of one hundred and forty-eight and one-half inches from said supply, the Rialto Irrigation District to one hundred and fifty inches, subject also to the rights of the Armstrong estate; that after all the foregoing owners are supplied McBean is the owner of the residue thereof, except four inches reserved by said Raynor; and determined the order in which these parties should supply said thirty inches to the cross-complainants.

This appeal is taken by said Mary E. Armstrong, executrix, Alexander McBean and the Rialto Irrigation District, out of whose water supply said thirty inches are to be furnished to those of the original defendants who filed the first of said cross-complaints, and who are the respondents here; and, except as to the rights of the intervenor, who became the owner of lots 7 and 8 under the foreclosure of the mortgage executed before any rights had attached to the water developed thereon, the judgment relates to waters derived from a different property and is based upon issues framed between certain of the defendants and parties brought in by their cross-complaint and by the cross-complaint of Mrs. Armstrong. The appeal is from the judgment and from an order denying a new trial.

1. Appellants contend that the relief sought by the cross-complaint constitutes no ground for a cross-action.

This question is raised by the answer of Mrs. Armstrong to the cross-complaint, and by demurrer, and also by objections to evidence.

Section 442 of the Code of Civil Procedure provides: "Whenever the defendant seeks affirmative relief against any party, relating to or depending upon the contract or transaction upon which the action is brought, or affecting the property to which the action relates, he may, in addition to this answer, file at the same time, or by permission of the court subsequently, a cross-complaint. The cross-complaint must be served upon the parties affected thereby, and such parties may demur or answer thereto as to the original complaint."

I think appellants' contention must be sustained. The suit was brought by the plaintiff to quiet his title, as against the defendants, to forty-nine inches of water flowing from artesian wells upon lots 7 and 8, to which lots he held the legal title under a conveyance from the Vivienda Water Company. The defendants claimed title to thirty inches of water flowing from said wells, but subject to the thirty-five inches of water therefrom which had been sold to the Terrace Water Company by the former owner of said lots prior to the contract for the thirty inches to defendants. Defendants' contract was made with the Vivienda Water Company prior to the conveyance to plaintiff, and in said contract it was provided that if said wells should at any time fail to afford sufficient water to furnish defendants' said thirty inches, it would supply that quantity from its other source of supply known as the Meeks mill and Garner properties. This provision in the contract in no way affected defendants' right to thirty inches of water from the wells then owned by the plaintiff, and their right to that water was pleaded in their answer to plaintiff's complaint, and could have been fully and finally determined under said complaint and answer. The plaintiff was not a party to that contract, and could not be affected in any way by that part of it by which, in a certain contingency, the thirty inches of water was to be supplied by the Vivienda Water Company from an entirely different source, with which the plaintiff was in no way connected. The property in con-

troversy between the plaintiff and the defendants was thirty inches of water to be taken from the artesian wells on lots 7 and 8, while the property in litigation under the cross-complaint was a wholly different property, though of the same nature and quantity, to be obtained from an entirely different source, and which neither the plaintiff nor any party to the action was under any obligation to supply. It formed no part of the controversy between the plaintiff and the defendants, or any of them, nor did it form any controversy between the different defendants, but it formed a controversy between certain of the defendants and persons who were not parties, and which in no way affected the plaintiff, or the contract by which the cross-complainants acquired the right to the thirty inches of water from the plaintiff's wells. Respondents cite *Winter v. McMillan,* 87 Cal. 256, 22 Am. St. Rep. 243, to the proposition that new parties may be brought in upon a cross-complaint. That is not questioned; but the presence of the new parties thus brought in must be necessary to the full determination of the rights of the parties then before the court, touching the property in litigation between them, where the proper relief cannot be given upon the answer to the complaint without their presence. In that case the presence of the Helbings was necessary to the determination of defendants' right and title to the property as against the plaintiffs, who claimed title under a deed from them, and who, relying upon that deed, were seeking to quiet their title as against the defendant to the same property. Here the property was not the same, and the plaintiff was not interested in or affected by the questions of property to which the cross-complaint related.

2. Appellants also contend that the cross-complaint did not state a cause of action against them. If that is true, the judgment against them cannot be sustained. That the cause of action, if any is stated in the cross-complaint, had not accrued at the time it was filed, I think is clear.

The contract or conveyance of the water under which respondents claim, dated December 6, 1887, sold and conveyed a perpetual flowing stream of water equal to thirty inches, "said water to be obtained from first party's artesian wells on lots 7 and 8 on block 25 of the rancho San Bernardino, . . . . and

in the event that first party's supply of water from its artesian wells should at any time be insufficient to supply the said thirty inches of water, then first party agrees that the same shall be supplied from its other source of supply, to wit, from the Meeks mill and Garner properties."

This conveyance was recorded April 21, 1888, and the conveyance of said lots to plaintiff Lewis was not made until March 22, 1892. He therefore took the property with notice of the conveyance of said thirty inches of water to the defendants and cross-complainants, and was bound to furnish said water so long as he retained the title and possession of the property, unless the wells should fail to supply sufficient for that purpose.

The cross-complaint alleges that eighty-four inches of water had been developed on said lots 7 and 8 prior to and at the time they were conveyed to the Vivienda Water Company (which quantity was more than sufficient to furnish said first thirty-five inches and the thirty inches to the cross-complainants), and cross-complainants further allege that they received said thirty inches immediately after said grant, "and ever since, without interruption or objection, except the commencement of this action by said Lewis, have continuously used said thirty inches of water upon their said premises for irrigation and domestic uses."

There is no allegation in the cross-complaint that any contingency had arisen which would entitle the cross-complainants to demand that the water should be supplied from the Meeks mill and Garner properties. It is not only not alleged that the artesian wells had failed to furnish sufficient water, but it is alleged that they had continuously received that quantity of water from that source. It is true they allege the pendency of the suit to foreclose the mortgage executed by Ward upon said lots, but the title and possession of the plaintiff had not failed, and their supply of water from that source has not been interrupted. To prevent misapprehension, it may be added that whether the foreclosure of the mortgage which was executed prior to the contract for the water here in controversy, and which terminated respondents' supply from the wells, is a contingency which under the contract would entitle respondents to have the water supplied from the other source, the wells not having failed to

flow "a sufficient quantity of water," is a question not necessary to be decided, and upon which no opinion is expressed. All we mean to say is, that if it would constitute such contingency, no failure to obtain the water was caused by the pendency of the proceedings to foreclose at or prior to the filing of the cross-complaint.

It is said by respondents, however, that "the deprivation of the thirty inches of water from the artesian wells, and ouster from the same by reason of the foreclosure and sale and sheriff's deed under the Donovan mortgage, is pleaded in their supplemental cross-complaint." But this does not aid the original cross-complaint. The cause of action must exist when the action—commenced by the cross-complaint—was brought. If a suit be brought upon a promissory note before it becomes due, the complaint would not be aided by a supplemental complaint filed after it became due alleging its maturity at a date subsequent to the commencement of the action. It must be clear that until the cross-complainants' supply of water from the artesian wells had failed, from some cause, no right or cause of action could exist against the owner of the Meeks mill and Garner properties, or against the owners of water supplied from that source. Not only so, but the court found that on or about March 30, 1895, the Terrace Water Company, by virtue of the sheriff's deed of said property and of all the water flowing from the artesian wells thereon, ousted the cross-complainants therefrom and deprived them of all water from said wells, and from the use of said pipe line connecting therewith; and that on the —— day of April, 1895, they demanded of the Vivienda Water Company and the executrix of A. C. Armstrong that they be supplied with thirty inches of water from the Meeks mill and Garner properties (see findings 22 and 23); nor is there any finding that they were deprived of water from the wells prior to the execution of the sheriff's deed, though it is found that there was a gradual diminution of the flow, until at the time the sheriff's deed was executed there was not more than sufficient to supply said first thirty-five inches of water. Other questions made by appellants need not be noticed.

The judgment and order against appellants should be reversed, and the cross-complaint of respondents dismissed.

Searls, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order against appellants are reversed and the cross-complaint of respondents dismissed.

Garoutte, J., Harrison, J., Van Fleet, J.

Hearing in Bank denied.