[Sac. No. 2059. In Bank.—December 1, 1914.]

## A. L. REED, Respondent, v. J. WING et al., as Trustees of the Town of Fairfield, Appellants.

MUNICIPAL CORPORATIONS—REFERENDUM ELECTION—RAILWAY FRANCHISE — ACTION TO ANNUL ORDER OF TRUSTEES — RAILWAY NOT NECESSARY PARTY.—Where a citizen and taxpayer brings an action to annul an order of the board of trustees of a municipal corporation declaring that by a referendum election an ordinance granting to a railroad company a franchise for a spur track has been rejected by the requisite number of voters of the municipality, the railroad company is not a necessary party.

ID.—TAXPAYER AND CITIZEN—WHETHER MAY MAINTAIN ACTION.—Such action may be maintained by a single citizen and taxpayer.

ID.—PARTIES TO ACTION—GENERAL RULE AS TO WHO SHOULD BE MADE—EXCEPTION TO RULE.—According to the general rule, all persons interested in a suit ought to be parties to it, but one of the exceptions to this rule is that where a decree with reference to the subject matter of the litigation may be made without concluding in any way the rights of a person having an interest, such person is not a necessary party to the action.

ID.—ADJOURNED MEETING OF BOARD OF TRUSTEES—HOUR OF ASSEMBLING.—Where the hour of assembling is not specified in the motion to adjourn a regular meeting of the board of trustees of a municipal corporation, the adjourned meeting, from which two of the trustees are absent, is invalid, and an ordinance thereat passed, calling a referendum election on a "franchise ordinance," is void.

ID.—NOTICE OF MEETING—RESOLUTION.—Such ordinance cannot be regarded as a "resolution" so as to validate the election, since the law (Stats. 1883, p. 268) requires that the notice of the election must be in accordance with an ordinance.

ID.—NEW PARTY—BRINGING IN BY CROSS-COMPLAINT.—A new party, not necessary to the decision of the matter before the court, cannot be brought in by cross-complaint.

ID.—CROSS-COMPLAINT—BRINGING IN NEW PARTY AND SEEKING RELIEF FOREIGN TO SUBJECT MATTER OF SUIT.—Where a citizen and taxpayer brings an action to annul an order of the board of trustees of a municipal corporation declaring that by a referendum election an ordinance granting a railroad company a franchise for a spur track has been rejected by the requisite number of voters of the municipality, a cross-complaint alleging wrongful acts on the part of the railroad company in laying its tracks, and praying that the action abate until the company is made a party, that the company be adjudged to be without a franchise to lay such tracks, that the franchise ordinance be declared of no present effect and the fran-

chise granted thereby be held suspended pending an election, and that the plaintiff be adjudged a person without interest in the controversy, is demurrable as seeking relief foreign to the subject matter of the suit and bringing in a new party not necessary to the decision of the matter before the court.

APPEAL from a judgment of the Superior Court of Solano County and from an order refusing a new trial. A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

J. A. Mackenzie, and W. U. Goodman, for Appellants.

T. T. C. Gregory, and Theodore W. Chester, for Respondent.

MELVIN, J.—The defendants appeal from a judgment against them and from an order denying their motion for a new trial.

Fairfield is a city or town of the sixth class, organized under the statute of 1883, (Stats. 1883, p. 93), commonly known as the "Municipal Corporation Law." The defendants are the trustees of the municipality and the suit was instituted by a citizen and taxpayer of Fairfield to annul an order of the board of trustees declaring that by a certain referendum election an ordinance previously sought to be passed by the trustees had been rejected by the requisite number of voters of the municipality.

On January 13, 1912, the trustees of Fairfield, by a certain by-law known as "Ordinance No. 43" granted, or sought to grant, to the Southern Pacific Railroad Company a franchise to build a spur track over a designated route in said town. Subsequently two petitions, signed by a number of the voters of Fairfield, were presented to the trustees and they passed "Ordinance No. 44," by which they sought to submit "Ordinance No. 43" to a vote of the citizens of the town. An election was held and the board of trustees declared that the people had repealed the ordinance in question. It was at this election and at the action of the board of trustees in declaring its result in favor of the objectors to the franchise that plaintiff's attack was directed, and the court gave judgment in his favor to the effect that the election was illegal and void and that the action of the board of trustees in approving and ratifying the said election was similarly a nullity.

By demurrer and answer the defendants raised the point that there was a fatal nonjoinder of parties, because the railroad company was not made one of such parties, and they make the contention here that the effect of the judgment from which they appeal being to reinstate ''Ordinance No. 43'' and give to the railroad corporation a valuable franchise, that corporation was a necessary party. But the validity of the original ordinance was not necessarily involved in this controversy. The attack was made merely upon the *election* and the subsequent order of the board. True, the effect of the judgment was to leave ''Ordinance No. 43'' just where it was before the election, but it was and is still open to attack upon any suitable ground. The judgment before us would preclude no one from a future attack upon the original or ''franchise ordinance'' as it is called in the briefs. While the railroad company might have some interest in the outcome of the suit, its interest is not and cannot be the same as that of the plaintiff. It is not denied by plaintiff, and cannot be denied, that according to the general rule, all persons interested in a suit ought to be parties to it, but one of the exceptions to this rule is that where a decree with reference to the subject matter of the litigation may be made without concluding in any way the rights of a person having an interest, such person is not a necessary party to the action. (*Story* v. *Livingston,* 13 Pet. 375, 10 L. Ed. 200; *Lytle Creek Water Co.* v. *Perdew,* 65 Cal. 455, [4 Pac. 426].) It is suggested, however, that if the plaintiff has a right to bring an action of this sort without other parties plaintiff being brought in, all of the citizens in turn, as well as the railroad company, may prosecute separate similar actions, much to the inconvenience of the trustees. The obvious answer to this is that if all of the other citizens and the railway corporation are interested, in the sense that they should be made parties, no taxpayer could prosecute such a suit because of the practical impossibility of finding and bringing into court all of such persons. On the other hand, equity would afford relief if the defendants were harassed by a multiplicity of suits. The plaintiff as a citizen and taxpayer had a right to maintain such an action as this. If the election had ratified the action of the trustees and had resulted in voting to the Southern Pacific Company a valuable franchise, no one would doubt the right of the plaintiff to attack such a disposition of some-

thing belonging to the citizens, that is to say, a use of the streets different from that common to all. But a citizen may believe that the city of his residence is injured by a refusal to grant certain privileges to a public utility. Such a citizen may attack the method of the refusal. This is the principle which is supported by such cases as *Gibson* v. *Board of Supervisors*, 80 Cal. 359, [22 Pac. 225].

Respondent is of the opinion that the statute under which the election was initiated, called, and held, was repealed by a constitutional amendment passed prior to the holding of the election which we are considering. It is recited in "Ordinance No. 44," that said ordinance was passed for the purpose of holding an election under the amendments to the Municipal Corporation Act, and particularly under section 3 thereof (Stats. 1911, p. 362), which was a re-enactment of section 12 of the original act. This section had reference to referendum elections. It provided that no ordinance should go into effect until the expiration of thirty days after its final passage, and prescribed the procedure for inaugurating a referendum election during such period of thirty days. The section also provided that the movement for a referendum must originate in a petition signed by qualified electors equal in number to twenty-five per cent of the entire vote cast at the last preceding general municipal election. After the passage and approval of this amendment to the Municipal Corporation Act just cited, an amendment to the constitution (sec. 1 of art IV) was adopted (Oct. 10, 1911). The section, so far as it relates to this discussion, is as follows:

"The initiative and referendum powers of the people are hereby further reserved to the electors of each county, city and county, city and town of the state, to be exercised under such procedure as may be provided by law. Until otherwise provided by law the legislative body of any such county, city and county, city or town may provide for the manner of exercising the initiative and referendum powers herein reserved to such counties, cities and counties, cities and towns, but shall not require more than fifteen per cent of the electors thereof to propose any initiative measure, nor more than ten per cent of the electors thereof to order the referendum. . . . In the submission to the electors of any measure under this section, all officers shall be guided by the general laws of this state, except as is herein otherwise provided.

"This section is self executing but legislation may be enacted to facilitate its operation, but in no way limiting or restricting either the provisions of this section or the powers herein reserved." [Stats. 1911, p. 1655].

Respondent takes the position that this constitutional provision changed the basis for calculating the number of signers who might effectively petition for a referendum election. The statute specified a number of voters equal to twenty-five per cent of the vote cast at the last election; the constitution ten per cent of the *electors* of the municipality. The respondent says that the amendment to the constitution wrought a fundamental change in the method of calculation and thereby repealed the statute in that regard, and that it cannot be said that twenty-five per cent of the vote cast at the last general municipal election held in Fairfield before the referendum election took place would equal ten per cent of the *electors resident in Fairfield* when the referendum petition was signed. It frequently happens that a very small percentage of the electors of a town participate in an election. If the number falls below forty per cent of the electors, obviously twenty-five per cent thereof would be less than ten per cent of the registered voters. It is argued also that the increase in registration might be so great between an election and the subsequent circulation of a referendum petition that twenty-five per cent of the votes cast at the election would by no means equal or exceed ten per cent of the number of qualified electors resident in the town at the time of the circulating and filing of the referendum petition. That the statutory and not the constitutional method was followed in the inauguration of this proposed referendum is quite apparent both from the face of the petition and from the ordinance which called the election. The certificate of the town clerk to the petition was, in effect, that it was signed by qualified voters of the town "equal in number to more than twenty-five per cent of the entire vote cast" at the last general election, and we have seen that the trustees acted upon the same statute as that upon which the clerk depended. But appellants contend that since the initiative and referendum powers of a town are to be exercised "under such procedure as may be provided by law," the amendment to the constitution had the effect of continuing in force the statutes ordaining the procedure to be followed in any movement for the referendum of an ordinance.

We need not pass upon the constitutional question thus raised because even upon the basis of the validity of the petition we would be compelled to sustain some of the objections to the regularity of the election.  Our reason for avoiding discussion of the constitutional question is that exactly the same problem will not, in all probability, be presented again as the act of March 14, 1911, was formally repealed by the act approved January 2, 1912 (Stats. 1911, Ex. Sess., p. 131), and a new act was passed providing by general law the manner of exercising the referendum in municipalities of the class of Fairfield.  This act was not in effect until after the circulation of the petition which we are here considering.  (Const., art. IV, sec. 1.)

One of the valid objections to the regularity of the election is that "Ordinance No. 44," calling the election, was not introduced at a regular or an adjourned meeting.  It was stipulated that the regular meeting night of the board of trustees was Tuesday of each week.  A regular meeting was held on Tuesday, January 23, 1912.  The minutes of that meeting show that the "board adjourned to meet January 25, 1912."  *No hour* for the meeting was specified.  A meeting was held on the evening of the 25th at or about the hour for holding regular meetings, and "Ordinance No. 44" was introduced at that meeting.  Two of the trustees were absent.  It seems to be settled that such a meeting is invalid unless the hour of assembling be specified in the motion to adjourn.  (*San Buenaventura Mfg. Co.* v. *Vassault,* 50 Cal. 537; *Thompson* v. *Williams,* 76 Cal. 154, [9 Am. St. Rep. 187, 18 Pac. 153] ; *Smith* v. *Dorn,* 96 Cal. 82, [30 Pac. 1024].)

But appellants insist that the board could have called the election by resolution and that for the purposes of this case we should regard "Ordinance No. 44" merely as a resolution in spite of its form.  There is authority for treating that which is an ordinance in form as a mere resolution under certain conditions, when only a resolution is required by law, but section 856 of act 2348, which applies to Fairfield provides that "All elections in such city or town shall be held in accordance with the general election laws of the state, so far as the same may be applicable; . . . The board of trustees shall give such notice of each election as may be prescribed by ordinance, shall appoint boards of election, and fix their compensation, and establish election precincts and polling places and may change

the same." (Stats. 1883, p. 268.) The ordinance in question did prescribe the notice which was to be given the voters. It also provided for the expenditure of money for compensation of election officers. It is the general rule that money may be appropriated only by an act of the legislature and not by a resolution (*Mullan* v. *State*, 114 Cal. 580, [34 L. R. A. 262, 46 Pac. 670]), but we need not here determine whether the same doctrine must be applied to the legislative department of a municipality. It is plain that the *notice* of an election must be in accordance with an *ordinance*—either a general by-law or one passed, as this was sought to be passed, for the particular election—and such ordinance not having been introduced at a regular or an adjourned meeting was, as we have seen, void. Consequently the election was called without the notice prescribed by law.

A demurrer to the cross-complaint of defendants was properly sustained. The cross-complaint, so-called, was for the most part a reiteration of the matters pleaded in the answer. It further set forth some alleged wrongful acts of the Southern Pacific Company in laying its tracks on certain streets of Fairfield. The prayer was that this action abate until the said railroad company should be made a party; that the court adjudge the railroad company to be without a franchise to lay the said tracks; that "Ordinance No. 43" be declared to be of no present effect and the franchise granted thereby be held to be suspended pending an election; that A. L. Reed be adjudged a person without interest in the controversy; and for general equitable relief. If for no other reason the ruling of the lower court in sustaining the demurrer should be upheld because the cross-complaint sought to bring in a new party not necessary to the decision of the matter before the court. A new party may not be so brought into a case. (Code Civ. Proc., sec. 442; *Alpers* v. *Bliss*, 145 Cal. 570, [79 Pac. 171]; *Merchants' Trust Co.* v. *Bantel*, 10 Cal. App. 76, [101 Pac. 31; *Clark* v. *Kelley*, 163 Cal. 209, [124 Pac. 846]; *Andreson Co.* v. *Regenold*, 166 Cal. 47, [134 Pac. 999].)

The relief sought was also foreign to the subject matter of the suit. (*Bulwer etc. Mining Co.* v. *Standard etc. Mining Co.*, 83 Cal. 598, [23 Pac. 1102]; *Lewis* v. *Fox*, 122 Cal. 250, [54 Pac. 823].)

No other alleged errors require discussion.

The judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.

SLOSS, J., concurring:—I concur in the judgment. It is not easy to determine whether the complaint is designed as a petition for *certiorari* or as a bill in equity. It is clear enough that a writ of *certiorari* could not properly issue, for the reason that the proceeding sought to be reviewed is not judicial in character. And, if the question were new, I should seriously doubt the power of a court of equity to entertain, in the absence of statutory authorization, a suit brought by an elector to overturn or annul the action of the canvassing board in ascertaining and declaring the result of an election. But the propriety of a suit of this character has been upheld by this court in *Gibson* v. *Board of Supervisors,* 80 Cal. 359, [22 Pac. 225]. I see no satisfactory ground for distinguishing that case from the one at bar, and as the question is primarily one of procedure, it seems to me that the precedent should be followed.

I am not entirely satisfied that the Southern Pacific Railroad Company should not have been made a party to the proceeding. But the judgment annulling the referendum election was, so far as it went, in favor of that company's claim under the franchise, and a judgment should not be reversed for want of a party who can only be benefited by the judgment as it stands, provided his absence does not affect the rights of other parties. Under the circumstances of this case, and particularly in view of the conclusion that the election was invalid, it is apparent that the appellants are not in any way injured by the failure to bring in the railroad company. The error, if error there was, should accordingly be treated as nonprejudicial.

SHAW, J., dissenting.—I dissent from the judgment of affirmance herein. In my opinion, the plaintiff has no interest sufficient to enable him to maintain the action. He claims no interest except that of a voter of the town and of an owner of property situated therein.

The effect of the ordinance in question was to give the railroad company a right to lay its tracks in the streets and operate a railroad thereon for public use. A private citizen cannot maintain an action either to remove or establish an obstruction in or interference with a public highway unless such obstruction or interference will cause special benefit or special injury to his private rights or his private property. (*Blanc* v.

*Klumpke,* 29 Cal. 156; *Lewiston T. Co.* v. *Shasta etc. Co.,* 41 Cal. 562; *San Jose Ranch Co.* v. *Brooks,* 74 Cal. 467, [16 Pac. 250]; *Hargro* v. *Hodgdon,* 89 Cal. 628, [26 Pac. 1106]; *Bigley* v. *Nunan,* 53 Cal. 403.) The plaintiff does not show that his property or private rights will be in any way benefited, damaged, or affected by the validity or invalidity of the franchise. Consequently, so far as the relief asked concerns the said franchise or the use of said street the plaintiff clearly shows no actual interest.

The only plausible ground upon which it can be contended that the plaintiff has a right to maintain an action to establish such franchise is that it is an action of the same character as that which was declared to be maintainable by a private citizen in *Gibson* v. *Board of Supervisors,* 80 Cal. 359, [22 Pac. 225]. In that case it was held that a taxpayer of a county could maintain a bill in equity to annul the action of the supervisors in fraudulently and wrongfully declaring that the vote at an election held to determine upon the issuance of county bonds was against the bonds, and to obtain a decree declaring that at said election the vote was really in favor of the bonds. If the two actions were identical this decision would be authority in favor of the plaintiff. But there are important differences between them. In that case, the bond election merely determined the authority of the county board to issue county bonds; it did not purport to, and did not, vest a right of any character in any person. The county itself, being a local subdivision of the state government, had no interest in the matter. There was no person interested in having the bonds issued and the bridges built from the proceeds, except the citizens and taxpayers. If a citizen or taxpayer did not have the capacity to sue to have the real vote declared, the will of the people expressed by the true vote given would be defeated, because of the fraud or mistake of the supervisors in canvassing and declaring the returns. A citizen or taxpayer had no remedy provided by law; he could look to equity alone for relief. It was because of these considerations that it was declared in that case that the action could be maintained by a taxpayer. In this case the franchise, if valid, as the plaintiff claims it to be, was vested in the railroad company. That company, of course, had the right to prosecute or defend any action necessary for the protection of such franchise. If the referendum election was invalid for any reason, and the

franchise consequently valid, that company could maintain an appropriate action for a judgment to that effect against any person or public authority interfering with its use of the franchise. If the town authorities, or the state, disputed the company's right and attempted to molest it in its exercise of the franchise, by civil suit or criminal prosecution, the company could, in defense, show the invalidity of the proceedings for the election, precisely as the plaintiff here attempted to do. The citizen, or property owner, as we have seen, had no interest in the matter, and there was in existence a party, the railroad company, competent to protect its rights and assert its claims. Therefore, the reason upon which the decision in *Gibson* v. *Board of Supervisors* was based, does not exist in this case. The case is governed by the well known rule that courts do not entertain or decide cases presented by parties who have no legal or equitable interest in the subject of the action or in the relief asked.

Angellotti, J., concurred.