An original attachment issued, and came to the sheriff’s hands on the 6th June, 1822, in favor of Ragsdale v. Matthew Johnson. The sheriff returned that he could not find any goods and chattels, &c. and had summoned Jesse Taylor and James L. Armstrong to appear at the next Circuit Court in December, 1822. The attachment was issued returnable by a justice of the peace, to the Circuit Court. At December term, A. D. 1822, a declaration was filed on a bill single for $ 2,814, and Armstrong and Taylor appeared in Court, and, by consent, time was given to them until the third day of the next term to answer. At June term, 1823, judgment final by default was entered against Johnson. On the 15th April, 1823, a notice, signed by the sheriff, to Mc’Gimsey, president pro tem. of the Branch Bank at Shelbyville, was served, to declare what effects of Johnson’s he had in possession, &c., and what amount of bank stock the said Johnson owned in said bank, and what money belonging to him there was in said bank. The same notice was also served uppn Thomas Caldwell, cashier of said bank. At June term Jesse Taylor and James L. Armstrong filed their answers. In the year 1821 Matthew Johnson owned thirty-five shares of the stock of the Nashville Bank, at their branch in Shelbyville, on which there was actually paid in $ 875, and also had a note running in bank under discount for the sum of $ 3,600. On the 16th August, 1824, the note was protested, *238 and judgment was afterwards obtained against him and his indorsers, of whom the plaintiff was one. An arrangement was then entered into with the indorsers, Johnson having absconded, by which the bank agreed to receive notes on good and solvent men for the amount which the said Johnson owed over and above his stock, with a distinct understanding at the time that the bank would not issue an execution for the balance of the judgment, but continue to hold a lien on the stock which the said Matthew owned in bank, by the judgment, until the balance was paid, or until a transfer of the stock was made from him to David Norvell, who, in that event, was to put in his own note for the amount still owned by the said Matthew. The first part of this arrangement was carried into effect, and a credit given on the judgment for the amount agreed upon. It is believed this took place in January, 1822. In June following, the garnishment was served in this cause, and then no transfer of the stock had been received by the bank, but on the 12 th December, 1822, a transfer of the said thirty-five shares of stock was laid before the board of directors, dated the 2d May, 1822, which was agreed to by the board and passed, but the garnishee in this cause, not knowing the law, obtained leave to protest against the measure. At the time the garnishment was served there was owing the said Matthew, for unpaid dividends on the stock, on the 1st June, 1822, $-80.74, and the dividend to 12th December amounted to $22 or $23.
Jesse Taylor stated that on the 1st June, 1822, if he had stated an account with Johnson, there would have been a balance due him of $80.84; on the 16th April, 1823, there was a dividend in bank of the stock originally purchased by Johnson, of $ 101.97 J, and if the same dividend should-be declared in June, 1823, here would be $26.25 more. There is yet unpaid $ 25 on each share.
The attorney for the bank offered to introduce a note made by plaintiff, dated 16th February, 1822, and payable one year after date, for $125, with interest, payable to M. and J. Sutton or order for the use of the Nashville Bank, and proposed to prove the genuineness of said note, and that the same was justly due to the Nashville Bank, and wished it as a set-off against the claims for the dividends. But the Court refused to receive it, entered up judgment against the Nashville Bank at Shelbyville for $101.97|, and ordered the thirty-five shares of stock to be sold, and gave costs against the bank.
Fogg, the counsel for plaintiff in error, contended “ that the Court below erred in entering judgment against the Branch Bank.
“ 1. The suit or process of garnishment was not against the Nashville Bank or the Branch Bank.
“ 2. A corporation cannot, be garnisheed,'there being no law of this State authorizing such a process. The Act of 1794, ch. 1, § 22, does not extend to corporations, only to natural persons. See 2 Mass. Rep. p. 37.
*239 “ 3. The Branch Bank at Shelbyville could not be sued but by virtue of the Act of 1819, ch. 19, § 2, which only extends to suits on notes payable at such Branch Bank.
“ 4. Bank stock is not liable to foreign attachment, and can only be reached by suit in equity, where all the contingent rights and equities can be fully settled. See charter of the Nashville Bank, Act of 1807, art. 10, p. 1086, 1 vol. Scott; 3 Mass. 35 ; 4 do. 235.
“ 5. Here the assignment was made previous to the attachment to Norvell, who may, as for anything that appears to the Court, in equity and good conscience, be entitled to all the dividends on the stock. If such assignment was fraudulent it ought to be clearly shown, 13 Mass. 215; and the debt must be absolute at the time of'issuing the process.
“ 6. Upon the answers no judgments could be rendered, and the Court had no power to order the stock to be sold, and give judgment against the Branch Bank for costs.”
On the case made two points arise: 1st, Was the case in Court at the time the judgment was rendered, there being no examination of the garnishees, by which it was made appear that there was anything in their hands that the Court might condemn to the use of the plaintiff. This point the Court settled in the case of Cheatham v. Trotter, at Charlotte, June term, 1823. That in order to fix the cause in Court, something should be seized on which the Court could proceed, either by being taken by the sheriff, or so disclosed by the garnishee that an order could be made upon him, or upon such estate as, by his disclosures, the law would hold liable to answer the demand. And that to take judgment prior to the seizure by the sheriff, or ascertainment of funds in the hands of the garnishee, would render the whole proceedings as much void as to take judgment before service of an original writ.
2d. Is bank stock liable to the process of attachment ?
Bank stock is transferable, but it does not follow, because it may be transferred, that, therefore, it may be the subject of levy and sale. Bills and bonds are transferable ; judgments and entries are transferable ; but none of these, except the last, are the subjects of levy and sale, and this last, by special statute, which provides for the sale and mode of transfer.
And it is said, that Whatever is the subject of sale from man to man, out of which money could be made, should be the subject of execution sale; yet we know that many equities, bonds for the conveyance of land, and even implied trusts, may be sold by one individual to another; yet, such would not be the subject of an execution sale.
Policy and the public good require that many things which may, by the owner, be transferred, and where the transferee will be protected, shall not be subject to execution, and the circumstances above put are some of them.
And it is believed there are many reasons why bank stock should not be *240 the subject of execution sale, for if by execution sale, bank stock could be sold and withdrawn by the purchaser, then it would follow, that all the capital stock of the bank might be divested from the use intended by the charter, to the utter ruin of the institution, as well as that of the creditor, who had received the paper of such institution on the faith of the original charter.
And supposing that the sale and transfer could be made without withdrawing the stock transferred; still it would follow, that if the sheriff on sale made had the power to transfer, the stock might, by such a process, be transferred into the hands of those inimical to the institution, who might find it their interest to defeat the objects contemplated by its charter.
And again, if such transfer could be made without the consent of the directors, then they would lose the lieu, which by the act constituting them is secured, for the debts due to them by the holder; and would be also in direct contravention of the 10th article of the charter, which provides that no transfer shall be made without the consent of the directors; and this, too, for the express purpose of securing the payment to them of the moneys due, or which may be demanded from the holder of the stock.
The charter, when the bank went into operation, became a contract by which the stockholders were bound, and in which the note-holder had an interest, an intrusion upon it in the way proposed, without the consent of the stockholders by their directors, would, in effect, violate and impair the contract, and thereby infringe the provisions of the Constitution.
Whatever is not liable to execution is not liable to attachment, either for the purpose of supporting a judgment, or satisfying it after it should be pronounced.