## THE PEOPLE OF THE STATE OF NEW YORK ex rel. ABRAHAM LANSING, Plaintiff, v. GRENVILLE TREMAIN, Defendant.*

## SAME ex rel. JOSEPH McCANN v. JAMES KILBOURN.

*Charter of the city of Albany — chap. 77 of 1870 — Appointment of corporation counsel — term of office — "biennially" — meaning of.*

Section 10 of title 3 of chapter 77 of 1870, provides that the mayor of the city of Albany, with the consent and approval of the common council of said city, shall "biennially appoint" certain officers therein named, who shall continue in office until their successors have been appointed and duly qualified; other provisions of the act require a biennial election of the mayor and common council; that the common council shall, "biennially," elect its presiding officer from its own body, and "biennially" appoint its clerk.

*Held*, construing the several provisions together, that it was intended that the appointments specified in section 10 were to be made biennially, by each succeeding biennial administration of the municipal government, immediately upon its due organization, or so soon thereafter as it deemed best to exercise that right, without regard to the time when former appointments were made by the previous mayor and common council.

That after the commencement of each "*biennium*," an officer theretofore appointed under that section would continue in office only as holding over until the appointment of his successor.

The word "biennially" construed as signifying, not duration of time, but a period for the happening of an event.

Controversy submitted without action under section 372 of the Code.

This controversy involves the right of the relator to hold and exercise the office of corporation counsel of the city of Albany, under an appointment by the mayor and common council of the city, elected April 11, 1876, and entering upon their respective offices on the first Tuesday of May, 1876, as against the defendant, claiming the same office under an appointment of October 23, 1876, by a mayor and common council whose term of office expired on the 2d day of May, 1876.

Mr. Judson was serving as mayor when the election of April 11, 1876, occurred. He had been elected to fill a vacancy caused

* The judgment in each of these cases was affirmed in the Court of Appeals February 20, 1877, on the opinion of Bockes, J., below. — [Rep.

by the resignation of his predecessor, and also for a term commencing the first Tuesday of May, 1874, and ending the first Tuesday of May, 1876, at one and the same charter election, to wit, the election held on the 14th of April, 1874; immediately after which election Mr. Judson entered upon the duties of the office, which he continued to perform till the first Tuesday of May, 1876.

On the 23d April, 1874, he appointed the defendant, with the consent and approval of the common council of Albany, to the office of corporation counsel.

The defendant took the oath of office April 25, 1874, and filed his bond April 28, 1874.

The defendant also held over, under this appointment, during the succeeding full term of Mayor Judson's service and up to the time of his reappointment as hereinafter stated.

After the election of April 11, 1876, Mr. Judson — the defendant then holding the office of corporation counsel under the appointment of April 23, 1874 — on the 17th April, 1876, sent in a list of city officers to the common council for appointment and confirmation, and among the others the name of the defendant for the office of corporation counsel. These nominations were thereupon confirmed by the common council. They were also reconfirmed on the 24th April, 1876, and prior to the entry of the new administration into office.

Mr. Banks took the oath of office as mayor on the 20th April, 1876, and qualified for his duties, which were to and did commence on the first Tuesday of May of that year.

On the 23d October, 1876, with the consent and approval of the common council, he appointed the relator to the office of corporation counsel, and at the same time, with like consent and approval, appointed other incumbents to the appointable city offices.

The relator qualified and thereupon assumed to discharge the duties of the office, but the defendant disputed his right to enter thereon, claiming that under the appointments made by Mr. Judson on the 17th April, 1876, he was entitled to hold the office for the term of two years, under the provision of section 10 of title 3 of chapter 77 of 1870, known as the amended charter of the city of Albany, which is as follows :

"§ 10. The mayor, with the consent and approval of the common council of the said city, shall, biennially, appoint one chamberlain, one deputy chamberlain, one city surveyor and engineer, one street commissioner (who may, with the approval of the mayor, appoint two superintendents of streets), one corporation counsel, one city marshal, one superintendent of lamps, one inspector of weights and measures, one overseer of the poor, and such other officers as they may deem proper; and said common council shall prescribe the powers and duties of said officers and regulate their salaries; such officers shall continue in office until their successors have been appointed and duly qualified."

In the first case, *Abraham Lansing*, for the plaintiff.

*R. W. Peckham*, for the defendant.

In the second case, *S. O. Shepard* and *G. L. Stedman*, for the plaintiff.

*Samuel Hand*, for the defendant.

BOCKES, J.:

The question involved in this case is embarrassing in the extreme, as it admits of arguments more or less cogent, yet tending to divers conclusions. Nor are we aided in its solution by any adjudged case having direct bearing upon it by way of analogy. The case seems to stand alone in its peculiarity, depending for its proper decision upon the construction to be given to language of common use, yet so employed in a legislative enactment as to leave grave doubts as to its legal import. In considering the subject there are a few general principles to be observed as a basis for investigation. It is a cardinal principle in the construction of a statute, that it be so interpreted as to carry it into effect according to the intent of the legislature, which intent must be collected from the particular provision under consideration, read in the light of its general context. The meaning must be sought out and followed in its exposition, and the rule is laid down that when the intention may be collected with certainty, such intention must prevail over the literal sense of the terms employed. The entire act must be examined as

a whole, as also its component parts. Holding these general principles in mind, let us turn to the facts of this case and to the law which we are here called upon to interpret. The charter of the city of Albany provides that the mayor, with the consent and approval of the common council of the city, shall biennially appoint a corporation counsel, who shall continue in office until his successor is appointed and shall duly qualify. Under this provision the defendant was duly appointed to the office of corporation counsel on the 24th of April, 1876, and immediately thereafter qualified and entered upon the duties of such office; or rather continued in the performance of such duties, he having been such officer for a considerable time previous thereto. The defendant is still in possession of the office, claiming under such appointment. At the municipal election held pursuant to the provisions of the city charter on the second Tuesday of April, 1876, a mayor was elected in the place of the then incumbent, and also new members of the common council, whose terms of office would commence on the first Tuesday of May then next following. On the 23d of October, 1876, the relator was appointed to the office of corporation counsel in due form by the mayor, with the consent and approval of the common council, and having duly qualified, claimed his right thereto and demanded of the defendant the books and papers pertaining to the office. The defendant refused acquiescence in the relator's demand, insisting that he was the lawful incumbent of the office, and was entitled to hold it and exercise its duties for two years from the time of his appointment, approved by the common council April 24, 1876. This claim is based on the provision of the charter which authorizes the mayor, with the consent and approval of the common council, "biennially" to appoint a person to that office, it being insisted that "biennially" signifies "for two years;" and that the term of office was "for two years" from the time of the appointment, or from the time of qualification under the appointment. This construction of the provision of the charter the relator controverts and as we think, with reason.

Biennially does not, in its ordinary and proper use, signify duration of time, but defines a period for the happening of some event. If, therefore, in this case it implies duration of time, and thus declares a term, it must be by reason of some peculiarity in its use

in this instance. We are thus brought to consider not only the word itself in its ordinary meaning, but its context, the subject to which it relates, and, indeed, the entire city charter; for the scheme of municipal government disclosed thereby may afford a clue to its proper signification. Now, it seems that there were certain important changes in the governmental affairs of the city, contemplated and provided for in the charter, which were to occur "biennially," that is, every two years. A mayor was to be elected biennially, as were also the members of the common council. These officers were elected for a term of two years. Such term was fixed to commence on the first Tuesday of May succeeding their election in April. By the express terms of the charter the municipal year was to commence on the first Tuesday of May following the election. There would then be inaugurated a new administration, to continue for the term of two years. It was also provided that the common council should, "biennially," elect from its own body its presiding officer, and "biennially" appoint its clerk. Thus the scheme of municipal government promulgated by the charter looked to a *biennium*, to commence with the term of the newly elected officers who, in theory at least, were supposed to be the immediate representatives of the people of the municipality. To those officers the governmental affairs of the city were intended to be intrusted during their term of office — not partially but wholly.

This idea could only be carried out by giving to those officers the appointment of their subordinates. Under the construction claimed by the defendant for the provision we are considering, it would be in the power of an administration to select most or all of the ministerial officers of the next succeeding one. This could be accomplished by simply permitting those officers to hold over under old or former appointments until near the close of the administration, and then proceed to make appointments for the succeeding two years. Such a result cannot have been intended; for, as is well stated by counsel, it would obstruct and often defeat the very object of an election, when a change of policy and of elective officers had been determined, by destroying the control of the new administration over the administrative officers. So, too, it would be a subversion of all harmony in the tenure of those offices, by permitting the terms to commence and end at differ-

ent and unsettled periods, as a result of accidental causes, or to answer a sinister purpose. Again, it is a sound rule of construction that when a word or phrase is used in one provision of a law with plain and undoubted meaning, and it be also introduced into another part of the same act, the undoubted sense in which it was employed in the one case should be adopted in giving it construction in the other. Now, in the seventh section of title 3 of the charter, very similar language is employed as in the section under consideration. It is there provided that the common council shall "biennially" elect a president from its own body, and "biennially" appoint a clerk. It will not be pretended that a term of office for those officers was here contemplated, which could by any possibility extend beyond the two years for which the appointing officers were elected. Such a construction would be unreasonable, and often, if not always, impracticable in its results. It was undoubtedly contemplated that the "biennial" election and appointment here provided for should occur, be made immediately following the inauguration of the new biennial administration. Let the spirit and intent of this provision be carried into effect, and its letter would be complied with by the selection of those officers "biennially" at the commencement of the term of the newly elected common council, fixed for the first Tuesday of May following the election of its members. An omission then to make the selection, through accident, want of harmonious action or intentional neglect of duty, would not change the law so as to give it an effect other than what was designed, and what it would have had on the hypothesis of regular, proper and harmonious action at the time intended. Giving the same construction to the section of the charter here under examination, and in like sense it would be determined that the appointments thereunder were intended to be made "biennially" on the inauguration of every new biennial administration. Assuming that these newly elected officers will meet and organize at the time fixed by the charter, and that they will take action as authorized and directed by its provisions, honestly and harmoniously, and the appointments directed by the section under consideration would be made in accordance with both its letter and spirit. The appointments would then be "biennially" made, as authorized and required to be made, and at the

proper time, giving reasonable and fair construction to the various provisions of the charter, in view of the scheme of municipal government promulgated thereby. It will be observed that no time is specified as a term of office, no time for the beginning or ending of a term. The mayor, with, etc., " shall biennially appoint." It is not declared that the appointment shall be for two years, but that it shall be made biennially, that is, every two years, and that the appointee " shall continue in office " until his successor shall be appointed and shall duly qualify. Is it not reasonable to hold that it was intended by this provision, that there should be a right of appointment, in the way provided, for each term for which the appointing officers were elected? Under this construction there could be an exact compliance with the letter of the provision. There could be a biennial appointment. The term of the appointee would expire with the *biennium* for which he was appointed, and he would continue in office thereafter only as one holding over until his successor was duly chosen. We are of the opinion that if the spirit of the provision be fairly and effectually carried out, there should be an appointment at the first meeting of the newly elected officers, and thus according to the letter and intent of the law an appointment would be made biennially. Thus practically and by reason of the proper action of the appointing officers, the incumbent would hold for two years; not, however, because the law gave him a term of two years' duration, but because the appointing officers performed their duty at the time and as contemplated by the charter. Nor is this conclusion inconsistent with the amendment introduced in 1871, whereby it is provided that the mayor shall fill, by appointment, with the consent of the common council, until the next charter election, any vacancy which shall occur by the death or resignation of any city officer whether elected or appointed. It is not here intimated that the appointments authorized to be made biennially under the section we are now considering, should not be for the biennium so distinctly kept in view throughout the entire charter. And it may be here observed that this amendment marks the beginning of a municipal year, as the proper time to enter upon new action in municipal affairs. It gives no countenance to the idea that official terms of appointees might terminate by limitation, at divers and

unsettled periods during the municipal year. We are referred to the decision in *The People* v. *Green* (2 Wend., 266) as an authority hostile to the construction above suggested. The question there was whether or not the term of office to which the party (a sheriff) was elected, was for three years or for a shorter period. It was held that the officer was elected for a term of three years. Unlike the case in hand, a term was unmistakably declared, or as the court said, was fixed by the strongest implication. It was provided in this case that the officer should be chosen once in every three years, should hold no other office, should be ineligible for the next three years after the termination of his office, and might be removed by the governor at any time within the three years for which he should be elected; and further, the term was fixed by law to commence on the first of January following his election in November. Here a term was unmistakably intended, fixed to commence at a specified time, and the question was only how long from that time it should continue. We do not deem the case cited as conclusive of this at bar. That case was not, as is this now before us, surrounded by various matters having a necessary bearing on the question of construction involved in it; and, besides, the language employed in the two cases has little analogy when considered with reference to contexts, and to the dissimilarity existing as to the mode of selecting the officers. These remarks apply also to the case of *The People* v. *Coutant* (11 Wend., 132, 511), which was but a repetition of *Green's Case* (*supra*). Nor is the decision in *Marshall* v. *Harwood* (5 Md., 423) conclusive of this case. In the case last cited it was expressly provided that the officer should be elected "for two years," and there was nothing in the case tending to show that those words had, as then used, any different or other meaning than such as was ordinarily given them.

It is argued before us that the appointment in this case rested in the pleasure of the appointing officers. This argument is based on the position that the charter has not limited the duration of the office; in which case, according to the express provision of the statute, the office should be deemed to be held during the pleasure of the authority making the appointment. (1 R. S., 117, § 8; State Const., art. 10, § 3.) This argument is not entirely without force, especially in view of the practice of the highest department

of our government, extending back through many administrations. The justices of the Supreme Court in the Territories are appointed by the president of the United States, with the advice and consent of the senate. By act of congress, " they shall hold their offices for four years, and until their successors are appointed and qualified." (R. S. of the U. S., p. 331, § 1864.) This provision differs from the one we are considering in this, that it expressly declares a term of four years' duration. Yet, under this law, the president and senate exercise the power of appointment at pleasure. But, however this point should be determined in the case in hand, we prefer to put our decision here on the ground that, in view of the language employed in the section under examination, and of the various provisions of the charter, and of the governmental polity prescribed by it, it was intended that the appointments specified in that section were to be made biennially by each succeeding biennial administration of the municipal government at once on its due organization, or so soon thereafter as it was deemed best to exercise the right, without regard to the time when former appointments were made by the superseded officers.

This conclusion gives the office of corporation counsel to the relator in this case. Judgment in his favor is therefore ordered, with costs.

The case is not without its embarrassments. It would be unfair to ourselves to omit allusion to them, as though we had reached the conclusion above declared readily and with the most entire satisfaction of its correctness. Grave doubts have been encountered in the investigation, and we are conscious that the conclusion arrived at may be open, perhaps, to just criticism. We were called upon to express our convictions of right in the case, and, after careful study, we found ourselves less embarrassed in declaring the result above given, than in pronouncing a contrary decision.

LEARNED, P. J., and BOARDMAN, J., concurred.

Judgment for the relator in each case.