NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

THOMAS CORRIGAN and DEBORAH )
ELAINE CORRIGAN a/k/a DEBORAH )
ELAINE MARTIN, )
                      )
          Appellants, )
                      )
v.                      )     Case No. 2D14-3208
                      )
BANK OF AMERICA, N.A., )
successor by merger to BAC )
HOME LOANS SERVICING, LP f/k/a )
COUNTRYWIDE HOME LOANS )
SERVICING LP, )
                      )
          Appellee. )
_____)

Opinion filed February 5, 2016.

Appeal from the Circuit Court for Pasco
County; Wayne L. Cobb, Senior Judge.

Mark P. Stopa of Stopa Law Firm, Tampa,
for Appellants.

Adam M. Topel of Liebler Gonzalez &
Portuondo, Miami, for Appellee.

EN BANC

KHOUZAM, Judge.

       Thomas and Deborah Elaine Corrigan appeal the final judgment of

foreclosure entered in favor of Bank of America following a bench trial.  Because Bank

of America failed to show that it or its predecessors had standing to foreclose as of the date the original complaint was filed, we reverse and remand. We consider this case en banc to recede from this court's holding in AS Lily LLC v. Morgan, 164 So. 3d 124 (Fla. 2d DCA 2015), to the extent that it suggests that standing may be established at the time an amended complaint is filed. As we conclude the Bank did not have standing to sue, we do not reach the Corrigans' remaining issue.

The record shows that the Corrigans executed a note and mortgage on May 24, 2008. Countrywide Bank, FSB, was the lender listed on both documents. On December 11, 2008, another entity—Countrywide Home Loans Servicing, LP—filed a complaint against the Corrigans, seeking to foreclose the mortgage, attempting to reestablish the lost note, and alleging that it had standing to sue by virtue of an assignment. Attached to the complaint was a copy of the mortgage and a ledger of loan—but no copy of the note.

It was not until May 6, 2011, that Countrywide Home Loans Servicing, LP, filed the original note and mortgage. The note bore an undated blank endorsement. BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP, was later substituted as plaintiff for Countrywide Home Loans Servicing, LP. Then Bank of America—as successor by merger to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP—voluntarily dismissed the count for reestablishment of the lost note and filed an amended complaint. Attached to the amended complaint were the note with an undated blank endorsement, the mortgage, and an assignment of the mortgage. The assignment showed that Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Bank, FSB, had assigned the

mortgage to Bank of America, NA, successor by merger to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP. The assignment was dated December 15, 2011—approximately three years after the original complaint had been filed.

The Corrigans filed an answer and affirmative defenses, claiming that Bank of America did not have standing to bring suit because it was not in possession of the original, endorsed note at the time the lawsuit was filed. A bench trial was held on June 18, 2014. Bank of America called one witness, a mortgage resolution associate, who was familiar with the business records associated with the Corrigans' loan. The note, mortgage, assignment, and payment history were admitted into evidence. But no evidence was presented to establish that Bank of America or its predecessors had possession of the endorsed note at the time the suit was filed. After Bank of America rested, the Corrigans' counsel moved to dismiss, arguing that Bank of America had failed to show standing at the inception of the suit. The Bank's attorney responded that the filing of the original documents with the note endorsed in blank was sufficient to establish standing. The circuit court denied the motion to dismiss, and the Corrigans' counsel opted not to present any evidence. Final judgment of foreclosure was entered, and this appeal followed.

We agree with the Corrigans that Bank of America failed to show that it had standing to file suit because there was no evidence that it or its predecessors had possession of the original note, with the endorsement, at the time the original complaint was filed. "A plaintiff alleging standing as a holder must prove it is a holder of the note and mortgage both as of the time of trial and also that the (original) plaintiff had standing

as of the time the foreclosure complaint was filed." Russell v. Aurora Loan Servs., LLC, 163 So. 3d 639, 642 (Fla. 2d DCA 2015) (quoting Kiefert v. Nationstar Mortg., LLC, 153 So. 3d 351, 352 (Fla. 1st DCA 2014)).  This is because "[a] substituted plaintiff acquires only the standing of the original plaintiff."  Id.

"To be a holder entitled to enforce under the facts of this case, Bank of America was required to show physical possession of the original note and an endorsement or allonge either in blank or in favor of the plaintiff."  Eagles Master Ass'n v. Bank of Am., N.A., 40 Fla. L. Weekly D1510, D1510 (Fla. 2d DCA June 26, 2015). "The endorsement must have occurred before the filing of the complaint because it is axiomatic that standing must be shown as of the filing of the complaint."  Id. (citing Focht v. Wells Fargo Bank, N.A., 124 So. 3d 308, 310 (Fla. 2d DCA 2013)).  "Had the note with the blank endorsement been filed with the original complaint, that would have been sufficient to show standing."  Id. (citing Am. Home Mortg. Servicing, Inc. v. Bednarek, 132 So. 3d 1222 (Fla. 2d DCA 2014)).  But "a later filed copy of the note with the endorsement [does] not suffice to show standing at the time the complaint was filed."  Id. (citing May v. PHH Mortg. Corp., 150 So. 3d 247 (Fla. 2d DCA 2014)).

Here, no note—not even a copy—was filed with the original complaint. Though Bank of America later filed the original note and mortgage along with an assignment, these documents did not establish standing at the time the original complaint was filed because the endorsement was undated and the assignment was dated after the original complaint was filed.  No evidence was presented at trial to establish when the note was endorsed.  So Bank of America, as successor in interest to Countrywide Home Loans Servicing, LP, could not rely on the fact that it possessed the

note endorsed in blank at the time the amended complaint was filed because it only acquired the standing, or lack thereof, of Countrywide Home Loans, which lacked standing at the inception of the case. Bank of America's subsequent acquisition of the note endorsed in blank cannot cure this deficiency.

Bank of America relies on this court's recent decision in AS Lily to argue that standing may be established at the time an amended complaint is filed. See 164 So. 3d 124. To the extent that AS Lily suggests that standing may be established at the time an amended complaint is filed, we recede from our holding in that case. We reiterate that it is essential to establish standing as of the date the complaint is filed.

Reversed and remanded for the entry of an order of dismissal.

NORTHCUTT, CASANUEVA, SILBERMAN, WALLACE, MORRIS, BLACK, SLEET, SALARIO, and BADALAMENTI, JJ., Concur.

ALTENBERND, J., Concurs with an opinion in which LaROSE and CRENSHAW, JJ., Concur.
LUCAS, J., Concurs with an opinion in which VILLANTI, C.J., and KELLY, J., Concur.

ALTENBERND, Judge, Concurring.

I have no objection to the court clarifying the decision in AS Lily LLC v. Morgan, 164 So. 3d 124 (Fla. 2d DCA 2015). As a panel member on that case, I believe that it is distinguishable; perhaps, however, the rationale for our holding could have been stated more clearly.

In AS Lily, the original complaint was filed by a plaintiff other than AS Lily. That complaint sought to re-establish a lost note and to foreclose on the related mortgage. Four years later in 2012, and without objection, the trial court entered an order allowing the filing of an amended complaint. The original plaintiff was dropped from the foreclosure case and AS Lily appeared as the plaintiff. AS Lily's verified complaint attached the no-longer-lost note and mortgage.

The owners of the commercial property involved in AS Lily did not answer the amended complaint or file a motion challenging AS Lily's standing. Thus, as to AS Lily, the panel concluded that standing should be determined on the date of the amended complaint because it was effectively the original complaint for the new plaintiff, AS Lily. If AS Lily had been a party to the case four years earlier or if it had obtained its rights by assignment from the original plaintiff, the outcome, clearly, would have been different. Thus, I continue to believe that AS Lily was correctly decided. It simply involved a relatively unique set of facts.

LaROSE and CRENSHAW, JJ., Concur.

LUCAS, Judge, Concurring.

Today the court ensures that we continue along a well-worn road of standing law in mortgage foreclosure proceedings. Because we must hew to the route laid before us, I concur with the court's decision. But I question the rationale of applying the affirmative defense of standing as if it were a jurisdictional prerequisite in cases such as these. Our courts' unwavering adherence to this standing-at-inception requirement imposes inequities in foreclosure cases and, in my opinion, has led the rule astray from whatever its underlying purpose may have been. We ought to change course.

I.

In recent years, the requirement that a foreclosing plaintiff must prove standing at the time a lawsuit is filed has become firmly entrenched as a feature of our law on mortgage foreclosure. See Dickson v. Roseville Props., LLC, 40 Fla. L. Weekly D2520 (Fla. 2d DCA Nov. 6, 2015) ("For better or for worse, it is settled that it is not enough for the plaintiff to prove that it has standing when the case is tried; it must also prove that it had standing when the complaint was filed."); Ham v. Nationstar Mortg., LLC, 164 So. 3d 714, 718 (Fla. 1st DCA 2015) (reversing foreclosure judgment where plaintiff could not establish standing at the time the original complaint was filed; "Although this rule has been criticized at times, we are bound to follow this long-standing rule . . . ."); Matthews v. Fed. Nat'l Mortg. Ass'n, 160 So. 3d 131, 132 (Fla. 4th DCA 2015) ("A party must have standing to file suit at its inception and may not remedy this defect by subsequently obtaining standing." (quoting Venture Holdings & Acquisitions Grp., LLC v. A.I.M. Funding Grp., LLC, 75 So. 3d 773, 776 (Fla. 4th DCA 2011))). Indeed, as one of my colleagues observed, this rule is now "axiomatic."

<u>Eagles Master Ass'n v. Bank of Am., N.A.</u>, 40 Fla. L. Weekly D1510, D1510 (Fla. 2d DCA June 26, 2015).

As axioms go, this one is quite rigid,[1] as our court's decision in the case at bar exemplifies. That Bank of America may have had every right to pursue the Corrigans' loan default in foreclosure when the trial commenced is of no moment; because it could only connect another entity's possession of the Corrigans' note to the time of filing an amended complaint, Bank of America's right to foreclose on its note's security, in this case, is lost. The failure to prove a historic point of standing precluded any consideration of the substantive merits of Bank of America's claim. Under the law, the court's resolution of this case is both inarguable and inescapable. That is so because, equity notwithstanding, this unbending rule of standing has become a "jurisdictional prerequisite" in effect, if not in name. Cf. <u>Focht v. Wells Fargo Bank, N.A.</u>, 124 So. 3d 308, 312 (Fla. 2d DCA 2013) (Altenbernd, J., concurring) (observing that with the requirement to prove standing at the time a foreclosure complaint is filed, "[t]he courts have erroneously transformed what should be a defendant's affirmative defense . . . into a jurisdictional prerequisite that must be established by the plaintiff to avoid a dismissal of the action"); <u>Dickson</u>, 40 Fla. L. Weekly D2520 at n.1 ("The rule requiring a plaintiff to prove its standing at the inception of suit at any point up to and through trial

---

[1]<u>See, e.g.</u>, <u>McLean v. JP Morgan Chase Bank, N.A.</u>, 79 So. 3d 170, 174 (Fla. 4th DCA 2012) (holding that bank's assignment of note dated three days after filing of a complaint failed to establish its standing because the plaintiff must prove it "had standing to foreclose *at the time the lawsuit was filed*").

does present difficult issues both as a matter of legal doctrine and as a matter of practical application.").[2]

For such stringency to have evolved in an equitable proceeding like foreclosure is a curious development.  Cf. Schroeder v. Gebhart, 825 So. 2d 442, 446 (Fla. 5th DCA 2002) ("A court of equity 'should not be shackled by rigid rules of procedure and thereby preclude justice being administered according to good conscience.' " (quoting Wicker v. Bd. of Pub. Instruction of Dade Cty., 106 So. 2d 550, 558 (Fla. 1958))); White v. Brousseau, 566 So. 2d 832, 835 (Fla. 5th DCA 1990) ("Equity disregards all form and looks to the substance and essence of every matter."); see also NL Indus., Inc. v. MAXXAM, Inc. (In re MAXXAM, Inc./Federated Dev. S'holders Litig.), 698 A.2d 949, 954 (Del. Ch. 1996) (denying defendants' motion to

---

[2]Properly understood, the requirement to prove standing merely ensures that a plaintiff holds "a sufficient stake in a justiciable controversy" to warrant a judicial decree.  Whitburn, LLC v. Wells Fargo Bank, N.A., 40 Fla. L. Weekly D2797 (Fla. 2d DCA Dec. 18, 2015) (quoting Centerstate Bank Cent. Fla., N.A. v. Krause, 87 So. 3d 25, 28 (Fla. 5th DCA 2012)); see also Hayes v. Guardianship of Thompson, 952 So. 2d 498, 505 (Fla. 2006) (holding that standing "requires a would-be litigant to demonstrate that he or she reasonably expects to be affected by the outcome of the proceedings, either directly or indirectly").  Ordinarily, Florida courts do not construe a plaintiff's lack of standing as if it were a jurisdictional defect.  See Godfrey v. Reliance Wholesale, Inc., 68 So. 3d 930, 931 (Fla. 3d DCA 2011) (denying defendant's petition for writ of prohibition "[b]ecause a lack of standing is insufficient to deprive a circuit court of subject matter jurisdiction").  It is an affirmative defense.  Dage v. Deutsche Bank Nat. Trust Co., 95 So. 3d 1021, 1023 (Fla. 2d DCA 2012); Jaffer v. Chase Home Finance, LLC, 155 So. 3d 1199, 1202 (Fla. 4th DCA 2015).  And unlike the defense of lack of subject matter jurisdiction, under Florida law a standing defense can be waived. Compare Fla. R. Civ. P. 1.140(h) ("The defense of lack of jurisdiction of the subject matter can be raised at any time."), and Strommen v. Strommen, 927 So. 2d 176, 179 (Fla. 2d DCA 2006) ("A trial court's lack of subject matter jurisdiction makes its judgments void, and a void judgment can be attacked at any time, even collaterally." (footnote omitted) (citing rule 1.140(h) and Gonzalez v. Gonzalez, 654 So. 2d 257 (Fla. 3d DCA 1995))) with Jaffer, 155 So. 3d at 1201 (holding that the failure to raise the affirmative defense of standing in a responsive pleading "generally results in a waiver").

dismiss shareholders' derivative action where the original plaintiffs to the lawsuit were not shareholders and thus lacked standing, and observing that "[u]nless some positive rule of law mandates a dismissal no matter what the equities may be, it makes no sense, in terms of equity, justice or judicial economy, for the [c]ourt to do what the defendants ask"). That development was by no means inevitable or, in my opinion, necessarily even intentional. When one delves into the origins of this standing rule in Florida law, a notable dissonance emerges between its genesis and how it has come to be applied today in mortgage foreclosure cases.

II.

In Florida, it appears that the requirement to prove standing at the time of filing a complaint was first introduced into our common law in the case of Marianna & B.R. Co. v. Maund, 56 So. 670 (Fla. 1911). But Marianna itself did not concern foreclosure at all. Id. at 670. We have examined the factual nature of Marianna previously, in Progressive Express Insurance Co. v. McGrath Community Chiropractic, 913 So. 2d 1281, 1285 (Fla. 2d DCA 2005):

> [I]n [Marianna], a landowner sought to recover for permanent damages to land committed by a railroad company. The landowner did not expressly plead or offer proof that the damages occurred before the landowner acquired his ownership interest in the property. After he filed suit against the railroad, the landowner obtained an assignment of the claim for damages to the property from the former owner and alleged the fact of the assignment in an amended pleading. The trial court entered a decree in favor of the land owner, and the railroad appealed. The Supreme Court of Florida reversed the decree and remanded the case to the trial court with directions to dismiss the landowner's case without prejudice.

(Citations omitted.)

One could marshal an argument that the standing-at-inception rule need not have migrated from Marianna into foreclosure proceedings at all, given the facts of that case. The context of the claim at issue in Marianna—a landowner's complaining of a direct injury to his estate against a railroad—differs substantially from that of a typical residential mortgage foreclosure case, where a plaintiff seeks to enforce a security interest for an alleged default on a loan. In a property damages claim, the plaintiff's connection to the property at issue serves as the basis for his or her claim to recover monetary damages, while in foreclosure, the security interest over the property at issue is merely incidental to a monetary debt that is founded upon a commercial instrument that is, itself, freely transferable. Cf. Marianna, 56 So. at 672 (explaining that standing to recover from injury to land belongs to the owner of that land at the time the injury occurred); Vance v. Fields, 172 So. 2d 613, 614 (Fla. 1st DCA 1965) (recognizing that "[t]he mortgage is a mere incident of and ancillary to" the promissory note that it secures (citing Scott v. Taylor, 58 So. 30 (Fla. 1912))).

But migrate the rule did. Cf. Ham, 164 So. 3d at 718. So assuming as we must that the rule appropriately applies in all foreclosure cases, it is still fair to ask: what compelled the court in Marianna to adopt such a rule? The answer, it seems, derives from two quotations that the Marianna opinion recited and then applied to resolve the controversy before it.

A.

The first quotation was from a treatise, 1 Joseph F. Randolph, Cyclopedia of Law and Procedure 744 (William Mack & Howard P. Nash eds., 1903). Marianna, 56 So. at 672 ("It is said in 1 Cyc. P. 744: 'A plaintiff cannot supply the want of a valid claim

at the commencement of the acquisition or accrual of one during the pendency of the action.' "). The entire extent of Mr. Randolph's discussion on this topic is the quote that Marianna recounts. A footnote in the cyclopedia indicates that thirty-three case opinions from seventeen jurisdictions issued between 1817 to 1898 support this sweeping pronouncement.[3] Yet, of those cases, only two concerned foreclosure, and of those, only one, Hovey v. Sebring, 24 Mich. 232, 232 (1872), examined the precise issue we see litigated so frequently in foreclosure cases today: that of holding a mortgage note at the time a complaint is filed. That case is worth a brief examination.

In Hovey, the Supreme Court of Michigan agreed with the general proposition that "whatever may be the state of facts which authorizes the suit to be brought in the name of any particular person, that state of facts must, as a general rule, exist at the time the suit is instituted." Id. at 233. However, the court in Hovey never suggested that a plaintiff's failure to prove this point would warrant the dismissal of its

---

[3]Those cases are: Collier v. Crawford, Minor 100 (Ala. 1822); Scott v. Fowler, 14 Ark. 427 (1854); Lewis v. Fox, 54 P. 823 (Cal. 1898); Wadley v. Jones, 55 Ga. 329 (1875); Smith v. Smith, 22 Kan. 699 (1879); Dugas v. Truxillo, 15 La. Ann. 116 (1860); Wheatland v. Lovering, 10 Gray 16 (Mass. 1857); Hovey v. Sebring, 24 Mich. 232 (1872); Werth v. Springfield, 22 Mo. App. 12 (1886); Tappan v. Tappan, 30 N.H. 50 (1855); Robinson v. Burleigh, 5 N.H. 225 (1830); Banigan v. Nyack, 49. N.Y.S. 199 (N.Y. App. Div. 1898); Dean v. Metropolitan El. R. Co., 23 N.E. 1054 (N.Y. 1890); Wattson v. Thibou, 17 Abb. Pr. 184 (N.Y. Gen. Term 1863); Hare v. Van Deusen, 32 Barb. 92 (N.Y. 1860); Garrigue v. Loescher, 3 Bosw. 578 (N.Y. 1858); Storm v. Livingston, 6 Johns Ch. 44 (N.Y. 1810); Dewit v. Greenfield, 5 Ohio 225 (1831); Roud v. Griffith, 11 Serg. & Rawle 130 (Pa. 1824); McLaughlin v. Parker, 3 Serg. & Rawle 144 (Pa. 1817); Stewart v. McBride, 1 Serg. & Rawle 202 (Pa. 1814); Campbell v. Scaife, 1 Phila. 187 (Pa. 1820); Miller v. Ralston, 1 Serg. & Rawle 309 (Pa. 1815); Blevins v. Alexander, 36 Tenn. 583 (1857); Nashville Bank v. Ragsdale, 7 Tenn. 296 (1823); Reed v. Brewer, 7 Tenn. 275 (1823); Crescent Ins. Co. v. Camp, 64 Tex. 521 (1885); Cox v. Reinhardt, 41 Tex. 591 (1874); Moreland v. Atchison, 24 Tex. 164 (1859); Bradford v. Hamilton, 7 Tex. 55 (1851); Linn v. Scott, 3 Tex. 67 (1848); Wetherell v. Evarts, 17 Vt. 219 (1845); Turner v. Pierce, 31 Wis. 342 (1872).

- 12 -

foreclosure lawsuit; rather, a prior plaintiff's lack of standing raised a potential affirmative defense to challenge *the strength of the foreclosing plaintiff's* claim:

> [T]he ownership or title can be inquired into, *only for the purpose of letting in any defense or set-off* the maker would have had as against a former holder (when transferred after maturity or with notice), *or for the purpose of showing that the plaintiff's possession of the note is not in good faith*."

Id. (emphasis added).

Thus, under Hovey, the want of standing by a prior plaintiff is merely a *facet of a defense* that a defendant can raise against the plaintiff.  Accord Dage, 95 So. 3d at 1023 ("[L]ack of standing is an affirmative defense that must be raised by the defendant . . . ." (quoting Phadael v. Deutsche Bank Trust Co. Ams., 83 So. 3d 893, 895 (Fla. 4th DCA 2012))); Jaffer, 155 So. 3d at 1202 ("We have repeatedly held that standing is an affirmative defense . . . .").

A substantive justification for the defense can be found in the second quotation recounted in the Marianna opinion, which came from the case of Wadley, Jones & Co. v. Jones, 55 Ga. 329, 330 (1875).  In that case, the Georgia Supreme Court gave the following laudatory explanation for the standing-at-inception rule:

> It is a rule of law to which there is, perhaps, no exception, either at law or in equity, that to recover at all there must be some cause of action at the commencement of suit. . . . [T]here are reasons of public policy, as well as of private justice, why there should be no needless haste in fomenting litigation, and why people *who are in no default and have committed no wrong should not be summoned before the public tribunals to answer complaints* which are groundless.

Id. (emphasis added).  According to Jones, then, the standing-at-inception rule emanates from the litigants' relative equities; its focus rests on the substance of the controversy, not its form.

- 13 -

B.

Relegated to an affirmative defense within an equitable proceeding, the standing-at-inception rule may hold merit in some foreclosure cases. See id. at 330. Certainly one can more readily glean alignment between the defensive application of this common law rule and the "public policy" and "private justice" considerations that the Jones court alluded to (and which were implicitly adopted in Marianna). But that is not how the rule is applied in Florida today. Somehow, and without any obvious explanation, Marianna's rule of standing at the inception of a case became intertwined with foreclosure proceedings and then transformed from what was arguably an affirmative defense for those "who are in no default" into a jurisdictional threshold that a foreclosing plaintiff must cross to claim relief, regardless of a defendant's default. Cf. May v. PHH Mortg. Corp., 150 So. 3d 247, 248-49 (Fla. 2d DCA 2014) (holding that bank's failure to present evidence that it held defendant's note prior to inception of its foreclosure lawsuit was a "failure to prove a prima facie case" that warranted dismissal). Whatever its merits, the standing-at-inception rule has strayed beyond the trajectory of its origin.

III.

The trial in this case illustrates how far off track this rule has gone. At the time the original complaint was filed in 2008, the Corrigans had not made a payment on their mortgage loan for three months. Nor apparently did they make any subsequent loan payments in the ensuing six years leading up to their trial. By Bank of America's reckoning, they owed over $346,459.44 on their debt. And although represented by counsel throughout the underlying litigation, neither of the Corrigans appeared at the

trial in their case. Indeed, with their standing-at-inception argument, they need not have bothered. Their lawyer proffered no testimony or evidence, gave no explanation for their nonpayment, made no cross-examination of Bank of America's one witness, and never suggested that the original plaintiff's lack of standing visited any prejudice, of any kind, upon his clients. The Corrigans all but conceded that Bank of America had acquired standing to pursue its claim against them at the time of trial.[4]

In essence, the Corrigans' successful defense to this lawsuit rested on a mechanical, unwavering, jurisdictional application of the common law standing-at-inception rule. Perhaps nothing more succinctly reveals how fully engrained the automation of this rule has become in foreclosure proceedings than the Corrigans' attorney's arguments before the trial court:

---

[4]Such a concession would be appropriate. As the majority opinion notes, Bank of America had filed the original note with the court prior to trial, which would confer standing upon Bank of America as a holder of the Corrigans' promissory note. See Riggs v. Aurora Loan Servs., LLC, 36 So. 3d 932, 933 (Fla. 4th DCA 2010) (holding that loan servicer's "possession of the original note, indorsed in blank, was sufficient under Florida's Uniform Commercial Code to establish that it was the lawful holder of the note, entitled to enforce its terms"). The majority opinion also mentions an "assignment of mortgage" from MERS to Bank of America (a document that purported to transfer the Corrigans' mortgage, not the underlying promissory note) but does not explain its significance with respect to the issue of standing. I would give it none. See Bristol v. Wells Fargo Bank, N.A., 137 So. 3d 1130, 1133 (Fla. 4th DCA 2014) (recognizing that "[a]n assignment of the mortgage without an assignment of the debt creates no right in the assignee" (quoting Vance v. Fields, 172 So. 2d 613, 614 (Fla. 1st DCA 1965))); but see Bank of New York v. Raftogianis, 13 A.3d 435, 450 (N.J. Super. Ct. Ch. Div. 2010) (observing that "commentators have noted the propriety of treating the assignment of a mortgage, without a specific reference to the underlying obligation, as effectively transferring both interests" (citing Myron C. Weinstein, 29 N.J. Prac., Law of Mortgages § 11.2 (2d ed. 2001) ("[T]o hold . . . that when one in terms assigns a mortgage, he intends, not an effective transfer of his lien alone, which is an absolute nullity, not only ignores [the] ordinary use of the term 'mortgage,' but is also in direct contravention of the well-recognized rule that an instrument shall if possible be construed so as to give it a legal operation."))).

THE COURT: Defense want to put on anything?

MR. STOPA: No, I have a Motion for Involuntary Dismissal, Judge. . . . [T]here was no testimony at all given as to—as to standing at inception. No testimony at all as to that the plaintiff had possession of an endorsed note at the time it filed the suit. Did they get the Note in to evidence? Certainly. Is the Note endorsed? Yes. However, there is nothing establishing that the plaintiff had possession of an endorsed Note when they filed the suit . . . . So they have nothing establishing possession of an endorsed Note before they filed suit. That's what you have to have in order to be the holder . . . .

You know what. I don't need—I don't need to put a case on this record. I'm going to win in the Second District . . . .

Indeed.

Whatever the competing equities may have been in this case—whether for Bank of America or for the Corrigans—our standing-at-inception rule, as it is presently applied, will not allow them a passing thought. Because Bank of America could not prove the technical point of a prior plaintiff's standing, we must ignore the merits of an equitable controversy. To my mind, that hardly seems equitable.

IV.

On this issue, our court raised a question of great public importance. See Focht, 124 So. 3d at 312 (noting "the ongoing foreclosure crisis in this State" and certifying the following question of great public importance: "Can a plaintiff in a foreclosure action cure the inability to prove standing at the inception of suit by proof that the plaintiff has since acquired standing?"). It remains an unresolved question that, I believe, would be well worth answering. The jurisdictional application of the standing-at-inception rule in foreclosure cases neither comports with the rule's common law origins, nor does it seem defensible within the tenets of equity. While it remains the law,

- 16 -

I must concur with our court's decision to continue following this rule. I simply wish we could stop following it so blindly.


VILLANTI, C.J., and KELLY, J., Concur.